J-S20001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RALPH SKUNDRICH | |
| Appellant | No. 1433 WDA 2014 |

Appeal from the Judgment of Sentence April 17, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0012621-2010

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.:          **FILED SEPTEMBER 09, 2016**

Appellant, Ralph Skundrich, appeals from the judgment of sentence entered in the Court of Common Pleas of Allegheny County after a jury convicted him of five counts of involuntary deviate sexual intercourse and other related offenses. After careful review, we affirm.

The relevant facts and procedural history are as follows. At approximately 2:30 a.m. on July 25, 2002, D.W. awoke on her living room couch to find an intruder standing above her. D.W. described him as a Caucasian male with salt and pepper hair, between five foot six and five foot eight inches tall, with a medium to stocky muscular build. Further, she

---

[*] Retired Senior Judge assigned to the Superior Court.

indicated that the intruder wore a mask during the entire incident. Once the intruder noted D.W. was awake, he pointed a gun at her, demanded she give him money, and threatened to kill her if she screamed. He ordered D.W. into her bedroom. When she attempted to scream, he punched her in the face and stomach and removed her clothing.

The intruder proceeded to perform oral sex on D.W., penetrate D.W. anally with his penis, and force her to perform oral sex on him. He led D.W. into the bathroom and forced her to urinate while he watched. While in the bathroom, he again forced D.W. to perform oral sex on him and ejaculated onto her face and chest. The intruder used a towel to clean D.W. off before anally penetrating her for the second time. He led D.W. back into her bedroom, demanded to know the location of her money, and instructed D.W. to wait for five minutes before leaving the room. Upon leaving D.W.'s residence, the intruder disconnected her phone and removed her phone handset.

After ten minutes, D.W. contacted the police and was transported to a hospital where DNA evidence was collected. In 2010, police obtained a search warrant to collect DNA evidence from Skundrich to test against the DNA evidence taken in relation to D.W.'s assault. Subsequent testing confirmed a match and Skundrich was arrested and charged with D.W.'s sexual assault.

On January 13, 2014, a jury convicted Skundrich of burglary,[1] five counts of involuntary deviate sexual intercourse,[2] two counts of sexual assault,[3] indecent assault,[4] terroristic threats,[5] simple assault, and false imprisonment.[6] Thereafter, the trial court sentenced Skundrich to an aggregate term of 65 ½ to 131 years' imprisonment. Skundrich subsequently filed a post-sentence motion, which the trial court denied. This timely appeal follows.

On appeal, Skundrich raises two issues for review. In his first issue, Skundrich argues that the trial court abused its discretion by admitting evidence of a sexual assault committed by Skundrich seven weeks prior to D.W.'s sexual assault. Specifically, Skundrich contends that the prior sexual assault was not sufficiently similar to D.W.'s sexual assault to constitute a common plan or scheme, and therefore was unduly prejudicial and improperly admitted under the common plan or scheme exception to Pennsylvania Rule of Evidence 404(b). We disagree.

"[T]he admission of evidence is within the sound discretion of the trial court and will only be reversed upon a showing that the trial court clearly

---

[1] 18 Pa.C.S. § 3502(c)(1).
[2] 18 Pa.C.S. § 3123.
[3] 18 Pa.C.S. § 3124.1.
[4] 18 Pa.C.S. § 2706.
[5] 19 Pa.C.S. § 2701(a)(1).
[6] 18 Pa.C.S. § 2903(a).

abused its discretion." ***Commonwealth v. Fransen***, 42 A.3d 1100, 1106 (Pa. Super. 2012). Evidence of other crimes is inadmissible at a trial when that proof is introduced solely to show the defendant's bad character or criminal propensities. ***See Commonwealth v. Keaton***, 729 A.2d 529, 537 (Pa. 1999); ***see also*** Pa.R.E. 404(b)(1). However, evidence of other crimes is admissible in certain circumstances, such as when offered to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. ***See*** Pa.R.E. 404(b)(2). Additionally, such evidence is admissible "to show a common plan, scheme, or design embracing commission of multiple crimes, or to establish the identity of the perpetrator, so long as proof of one crime tends to prove the others." ***Keaton***, 729 A.2d at 537 (citation omitted).

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is so distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under

the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. Tyson*, 119 A.3d 353, 389-39 (Pa. Super. 2015) (quoting *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987 (Pa. Super. 2007).

Upon review of the facts surrounding the previous sexual assault admitted under the common plan or scheme exception, it is clear that there are striking similarities between the two sexual assaults. The assaults occurred in neighboring counties, seven weeks apart. Both victims, who were female, awoke at approximately 2:30 in the morning to find a masked man standing over them as they slept. In both cases the intruder forced the victim to undress and perform various sex acts. Both of the victims complied with the intruder's commands because he brandished a deadly weapon throughout the assault. The intruder alternated between sexual acts that he forced the victim to perform. At some point during both assaults, the intruder ejaculated on the victim's face and upper body, and proceeded to use a towel or cloth to wipe the victim's face. Finally, in both cases, before he left, the intruder disconnected the victim's telephone access and instructed her to wait a specified period of time before leaving the room.

We find that the relevant details and circumstances surrounding each of the sexual assaults indicate criminal conduct that is sufficiently distinctive as to constitute a common plan or scheme. While Skundrich highlights

differences between the two cases, *i.e.*, different masks in each case, different deadly weapons used, and different descriptions of the intruder's hair color, we find that these differences are insignificant compared to the evidence of "criminal conduct which is so distinctive and so nearly identical as to become the signature of the same perpetrator." ***Tyson***, 119 A.3d at 389-39. Contrary to Skundrich's arguments, there is no requirement that crimes have to be carried out in an identical fashion to be considered an exception under the common plan or scheme doctrine. ***See Commonwealth v. Patterson***, 399 A.2d 123, 126, n.6 (Pa. 1976) (noting that the requirement of an "identical modus operandi is not required under the common plan or scheme exception"). Additionally, we do not find that the trial court abused its discretion in determining that the probative value of Skundrich's prior sexual assault outweighed its potential for undue prejudice. Given the substantial similarities between the two sexual assaults, it was reasonable to find the previous assault highly probative in determining the identity of D.W.'s intruder and that the description of Skundrich's prior assault alone did not render it unduly prejudicial. ***See Tyson***, 119 A.3d at 361. Accordingly, Skundrich's challenge to the admission of P.J.'s testimony is without merit.

In his final issue, Skundrich argues that the sentence imposed by the trial court was manifestly excessive and clearly unreasonable. Skundrich relies upon two arguments to support this contention. First, Skundrich

argues that the trial court abused its discretion by sentencing him outside the guidelines to the statutory maximum on every count and running the sentences consecutively, essentially creating a life sentence for a non-homicide offense. **See** Appellant's Brief, at 12, 22. Second, Skundrich argues that the sentence imposed was improper because the trial court imposed a sentence outside the guidelines without "meaningful consideration of the statutory factors." Appellant's Brief, at 18. Skundrich concedes that both arguments constitute challenges to the discretionary aspects of his sentence. **See** Appellant's Brief, at 11.

We find that Skundrich preserved his arguments concerning the discretionary aspects of his sentence through a post-sentence motion. Thus, he is in technical compliance with the requirements to challenge the discretionary aspects of his sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. McAfee**, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). "Two requirements must be met before we will review this challenge on its merits." **Id**. (citation omitted).

"First, an appellant must set forth in his brief a concise statement of the reasons relief upon for allowance of appeal with respect to the discretionary aspects of a sentence." **Id**. (citation omitted). "Second, the appellant must show that there is a substantial question that the sentence

imposed is not appropriate under the Sentencing Code." *Id*. (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Commonwealth v. Tirado***, 870 A.2d 362, 365 (Pa. Super. 2005) (citation omitted).

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. ***See id***. "Our inquiry must focus on the *reasons* for which the appeal is sought, in contrast to the *facts* underlying the appeal, which are necessary only to decide the appeal on the merits." *Id*. (citation omitted); ***see also*** Pa.R.A.P. 2119(f). In the present case, Skundrich's appellate brief contains the requisite Rule 2119(f) concise statement.

First, Skundrich argues in his Rule 2119(f) statement that the trial court abused its discretion by sentencing him outside the guidelines and to the statutory maximum on every count and running the sentences consecutively, essentially creating a life sentence for a non-homicide offense. Essentially, through this argument, Skundrich is objecting to the consecutive nature of his sentence.

"Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the 'minimum possible' confinement." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010) (citation omitted). The sentencing court "has the discretion to impose sentences

consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question." *Id*. (citation omitted); *see also* 42 Pa.C.S.A. § 9721(a). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Moury*, 992 A.2d at 171-72 (citation omitted).

Skundrich argues that the length of his sentence indicates that "extreme circumstances" are present here, and therefore the trial court's imposition of consecutive, rather than concurrent, sentences raises a substantial question. Skundrich bases this contention solely upon our holding in *Commonwealth v. Coulverson*, 34 A.3d 135 (Pa. Super. 2011). In *Coulverson*, we found that the trial court abused its discretion by sentencing a sex offender to the statutory maximum on each count and imposing the individual sentences consecutively, creating a virtual life sentence. *See id*. at 148. Based upon the similarities of this case to the facts in *Coulverson*, Skundrich argues that the mere fact that the trial court imposed a life sentence renders the trial court's aggregate sentence unreasonable. *See* Appellant's Brief, at 23.

*Coulverson* is plainly distinguishable. Our finding that the trial court in Coulverson abused its discretion was based upon the trial court's failure to adequately explain its reasons for imposing its sentence. *See Coulverson*,

34 A.3d at 143. Here, as discussed below, we find that the trial court provided a lengthy and comprehensive explanation of Skundrich's aggregate sentence, and demonstrated that it fully considered the requirements of the Sentencing Code.

We do not find that an "extreme circumstance" is present here. The trial court acted within its discretion in imposing consecutive sentences. Although the aggregate sentence is lengthy, it is nonetheless a legal sentence. Given the egregious nature of the sexual abuse in this case, and the resultant emotional harm that Skundrich inflicted on D.W., we agree with the trial court's conclusion that a sentence of 65 ½ years to 131 years imprisonment is reasonable under the circumstances and not excessive. Therefore, Skundrich's first challenge to the discretionary aspects of his sentence is without merit; it does not even raise a substantial question for our review.

Finally, Skundrich argues in his Rule 2119(f) statement that the trial court abused its discretion by imposing a sentence outside of the sentencing guidelines without a meaningful consideration of the statutory factors.[7] Specifically, Skundrich alleges that the trial court's sentence was improper because his sentence only reflected the seriousness of the crime,

---

[7] We note that while Skundrich's sentences for burglary and terroristic threats fall outside of the statutory guidelines, his sentences for involuntary deviate sexual intercourse, indecent assault, false imprisonment or simple assault are guideline range sentences.

Skundrich's criminal history, and the impact on the victim. A claim that a sentencing court imposed a sentence outside of the guidelines without specifying sufficient reasons presents a substantial question for review. ***See Commonwealth v. Holiday***, 954 A.2d 6, 10 (Pa. Super. 2008). Therefore, we will review Skundrich's arguments on the merits.

In imposing a sentence, the sentencing court must consider relevant statutory factors, including "the protection of the public, gravity of an offense in relation to impact on victim and community, and rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). A sentencing court has broad discretion in fashioning its sentence. ***See Commonwealth v. Walls***, 926 A.2d 957, 962-63 (Pa. 2007). A sentencing court is required to consider the sentence ranges set forth in the sentencing guidelines, but it is not bound by them. ***See Commonwealth v. Yuhasz***, 923 A.2d 1111, 1118 (Pa. 2007). Moreover, a sentencing court may depart from the guidelines, "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it related to the impact on the life of the victim and the community." ***Commonwealth v. Eby***, 784 A.2d 204, 206 (Pa. Super. 2001).

Initially we note that the trial court reviewed the pre-sentence investigation report. ***See*** N.T., Sentencing, 4/17/14 at 11. Where the trial

court had the benefit of reviewing a pre-sentence investigation report, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal publication, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Hallock*, 603 A.2d 612, 616 (Pa. Super. 1992) (citing

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988)). As the trial court

in this case had the benefit of a pre-sentence report, we must presume that

it considered all relevant sentencing factors and did not impose an

unreasonable sentence based solely on a limited number of factors.

Further, after review of the trial court's statements at sentencing, we

are satisfied that the trial court adequately stated its reasons for imposing

the sentence as follows.

> We have to determine how to sentence you. Do we sentence you to [a] single sentence for each count, or do we sentence you on each count, to run them concurrent or consecutive; and we make that determination by looking at all of the factors that are involved in this particular case, the facts in

- 12 -

this brutal assault, your despicable conduct, and the damage you have done to any innocent victim.

We look at the Guidelines; and, fortunately, the Guidelines are advisory. They're not mandatory. I don't have to stick to those guidelines. I can deviate from those Guidelines. There is no question that this is a criminal that requires total confinement, since you are a risk to society should you be free.

That, also, demonstrated that any sentence that I would give you other than the one I am now would defalcate [sic] the nature of the offenses that have been committed in this particular violent act.

I've reviewed the Pre-sentence Report. I've reviewed the Sexual Offender's Report. I've reviewed the transcript; and I remember this case vividly for the terror that you inflicted on that particular victim; and in going further through the Pre-Sentence Report, I note that your criminal activity started in 1987.

. . . . .

You're also, awaiting trial in Broward County Florida, 2012, for kidnapping and sexual battery. Not a very good history, is it? All of these factors make it clear that the sentence that I'm going to impose upon you is correct, because you are needed [sic] to be removed from society, and you are incapable of being rehabilitated.

You have had the opportunity to be supervised by County facilities and State facilities; and none of that has done anything to curb your criminal behavior.

In light of all of these factors, I'm going to advise you that your days of torturing women have now come to an end, as your decades of incarceration are about to begin.

N.T., Sentencing, 4/17/14 at 10-14.

While it is clear that the trial court noted the seriousness of the crime, Skundrich's criminal history, and the impact on the victim in fashioning a sentence, this is far from definitive proof that the court relied exclusively

upon such findings in imposing sentence. In fact, we note that the court remarked that it considered Skundrich's rehabilitative needs and the protection of the public in fashioning a sentence. Similarily, it is clear that the court did not rely upon one reason for the departure from the sentencing guidelines, but rather relied upon the seriousness of the crime, Skundrich's low probability of rehabilitation, Skundrich's criminal history, and the impact upon the victim and the community. These factors are permissible reasons for deviating from the guideline ranges. *See Eby*, 784 A.2d at 206. Therefore, we find that Skundrich's final challenge to the discretionary aspects of his sentence merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2016