J-A18022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT D. GATES | : | |
| | : | |
| Appellant | : | No. 619 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 5, 2018
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000728-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT D. GATES | : | |
| | : | |
| Appellant | : | No. 620 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 5, 2018
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000808-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT D. GATES | : | |
| | : | |
| Appellant | : | No. 621 WDA 2020 |

Appeal from the Judgment of Sentence Entered November 5, 2018
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002391-2015

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

J-A18022-21

MEMORANDUM BY NICHOLS, J.:                    **FILED: SEPTEMBER 10, 2021**

Appellant Robert D. Gates appeals from the judgment of sentence entered following a jury trial and multiple convictions for various sexual offenses, which we list in further detail below. Appellant argues the trial court erred by joining his three cases for trial, raises a claim of prosecutorial misconduct, and asserts the court should have granted his motion for acquittal. We affirm.

We state the facts based on our review of the record. On August 9, 2015, S.B. and H.B., the two minor Caucasian[1] daughters of Appellant's neighbor, revealed to their mother that Appellant had sexually assaulted them and M.H., a minor Caucasian female, between 2012 and 2013.[2] Crim. Compl., Docket No. 728-2016, 3/11/16. On August 17, 2015, the police executed a search warrant of Appellant's home and seized Appellant's phone, which contained numerous images of child sexual abuse, specifically of A.G., Appellant's minor Caucasian granddaughter. Crim. Compl., Docket No. 2391-2015, 9/5/15. The police also searched Appellant's computers and recovered hundreds of images of naked people, including children. N.T. Trial, 8/15/18, at 52.

_____

[1] We explain the relevance of the victims' ethnicity below.

[2] The police investigation began that same day, but the police did not immediately file charges against Appellant regarding these three victims.

- 2 -

As a result, the Commonwealth charged Appellant with multiple crimes at three separate dockets. At docket no. 2391-2015, based on the photographs on Appellant's phone, the Commonwealth charged Appellant with sixty counts of child sexual abuse of A.G., which occurred between January 2013 and August 2015. *See* Criminal Information, Docket No. 2391-2015, 12/28/15. At docket no. 728-2016, the Commonwealth charged Appellant with multiple counts of involuntary deviate sexual intercourse with a child (IDSI), aggravated indecent assault of a child, child pornography, and related offenses against S.B., H.B., and M.H., all of which occurred between January 2012 and August 2015. *See* Criminal Information, Docket No. 728-2016, 5/9/16. At docket no. 808-2016, the Commonwealth charged Appellant with eight additional counts of various sexual offenses against A.G., which occurred between January 2012 and August 2015. *See* Criminal Information, Docket No. 808-2016, 5/9/16.

According to the dockets at Nos. 2391-2015 and 728-2016, the Commonwealth filed a motion to join on April 29, 2016.[3] *See* Docket Nos. 2391-2015, 728-2016. On May 9, 2016, at docket no. 808-2016, the Commonwealth filed a Pa.R.Crim.P. 582 notice of joinder to try all three dockets together.[4]

_____

[3] The motion was not transmitted to this Court as part of the certified record.

[4] This notice was not separately docketed but was attached to the information filed at docket no. 808-2016.

On June 2, 2016, Appellant filed an omnibus pretrial motion at docket no. 2391-2015, which included a motion to sever all three cases. In relevant part, Appellant argued that he "could have conflicting and separate defenses" if all three docket numbers were tried together and he could elect to take the witness stand in one case but not another. Omnibus Pretrial Mot., Docket No. 2391-2015, 6/2/16, at ¶ 10.

According to the docket at no. 2391-2015, on June 10, 2016, the trial court granted the Commonwealth's motion to try all three docket numbers together and denied Appellant's motion to sever.[5] Order, Docket No. 2391-2015, 6/10/16, R.R. at 27a. On December 28, 2017, Appellant filed a motion for reconsideration. Mot. for Reconsideration, Docket No. 2391-2015, 12/28/17. On August 7, 2018, the trial court denied Appellant's motion for reconsideration. Order, Docket No. 2391-2015, 8/7/18.

Subsequently, at the jury trial, Trooper Todd Roby testified for the Commonwealth about a disc and a portable hard drive that the police seized during the search of Appellant's home. N.T. Trial, 8/15/18, at 70-71. Trooper Roby testified that the devices contained two password-protected files, titled

---

[5] This order was not transmitted to this Court as part of the certified record but was included in Appellant's reproduced record. We note that all parties and the trial court have an obligation to ensure that the complete record is transmitted to this Court. **See generally** Pa.R.A.P. 1921.

"Pics and Stuff 6" and "Pics and Stuff 7," and that the police could not open the files. *Id.* at 71-72.

Officer Henry Fownes further testified for the Commonwealth about the police investigation. *See id.* at 82-105. On cross-examination, Appellant's counsel asked if Appellant cooperated, and Officer Fownes agreed. *Id.* at 109.

The parties then had a sidebar before the Commonwealth's redirect. *Id.* at 111. At sidebar, because Appellant's counsel had asked if Appellant cooperated, the Commonwealth indicated that counsel had opened the door and that it would ask Officer Fownes if Appellant provided the passwords to the two files at issue. *Id.* at 112. Appellant's counsel protested, stating it was Appellant's "right to remain silent."[6] *Id.* On redirect, Officer Fownes testified that he asked Appellant, via Appellant's counsel, for the passwords, and Appellant refused.[7] *Id.* at 113.

We add that the Commonwealth presented testimony that the offenses occurred primarily at Appellant's home or at a nearby park. *See, e.g.*, N.T.

---

[6] Although Appellant's counsel did not explicitly say "objection," the Commonwealth and the trial court construed counsel's statement as an objection. *See* N.T. Trial, 8/15/18, at 112-13 (court disagreeing with Appellant and agreeing with the Commonwealth that it could rebut the inference that Appellant cooperated with the police).

[7] Appellant's refusal forms the basis for his claim of prosecutorial misconduct, which we discuss below.

Trial, 8/16/18, at 46, 121, 128. Appellant took the stand but did not testify about the password-protected files.

After the parties rested, Appellant moved to dismiss counts 3, 4, and 26 through 29, sexual abuse of children, at docket no. 728-2016, and twenty-six counts of sexual abuse of children at docket no. 2391-2015.[8] N.T. Trial, 8/15/18, at 197-99; N.T. Trial, 8/16/18, at 1. The trial court denied Appellant's motion to dismiss on August 16, 2018. N.T. Trial, 8/16/18, at 1.

On August 16, 2018, the jury found Appellant guilty of the following charges. At docket no. 2391-2015, for offenses based on the photographs of A.G. seized from Appellant's phone, the jury found Appellant guilty of thirty counts of sexual abuse of children.[9] At docket no. 728-2016, concerning S.B., H.B., and M.H., the jury found Appellant guilty of four counts of IDSI, six counts of aggravated indecent assault of a child, six counts of indecent assault, three counts of indecent exposure, six counts of corruption of minors,

_____

[8] Appellant did not identify which counts at docket no. 2391-2015 that he wanted dismissed. Rather, Appellant argued that he wanted to demur to "the majority of" the counts at docket no. 2391-2015 because all but "four [of the photos] do not show any sexual stimulation or act." N.T. Trial, 8/16/18, at 1. Appellant stated at his post-sentence motion hearing that there were twenty-six counts that he wanted to challenge. N.T. Post-Sentence Hr'g, 2/19/19, at 23.

[9] 18 Pa.C.S. § 6312(b)(1).

and four counts of child pornography.[10]  At docket no. 808-2016, which involved A.G., the jury found Appellant guilty of two counts of aggravated indecent assault, two counts of indecent assault, two counts of corruption of minors, and two counts of aggravated indecent assault of a child.[11]

Following a pre-sentence investigation, the trial court imposed an aggregate sentence of 54 to 108 years' imprisonment.  Order, 11/8/18, at 28; N.T. Sentencing Hr'g, 11/4/18, at 24.  Appellant timely filed a post-sentence motion on November 14, 2018, and an amended post-sentence motion on January 31, 2019.

On April 3, 2019, while his post-sentence motion was still pending, Appellant filed a notice of appeal.  On May 3, 2019, this Court issued a rule to show cause as to why the appeal should not be quashed as premature.  Order, Docket No. 500 WDA 2019, 5/3/19.  After receiving Appellant's response, on May 15, 2019, this Court quashed Appellant's appeal because no final order was entered denying Appellant's post-sentence motion.  Order, No. 500 WDA 2019, 5/15/19.

Meanwhile, on May 13, 2019, the trial court issued an order denying Appellant's post-sentence motion.  Order, Docket No. 2391-2015, 5/13/19.

---

[10] 18 Pa.C.S. §§ 3123(b), 3125(b), 3126(a)(7), 3127(a), 6301(a)(1)(ii), and 6312(d), respectively.

[11] 18 Pa.C.S. §§ 3125(a)(1), 3126(a)(7), 6301(a)(1)(ii), and 3125(b).

The trial court's order stated that it had earlier granted reconsideration of Appellant's sentence and held a hearing on February 19, 2019.[12] *Id.*

On May 31, 2019, Appellant filed another notice of appeal. On October 30, 2019, Appellant filed a motion to withdraw his appeal, which this Court granted on November 6, 2019. Order, 831 WDA 2019, 11/6/19.

On December 3, 2019, Appellant filed an unopposed petition to file a direct appeal *nunc pro tunc*. On May 29, 2020, the trial court granted Appellant's petition, and on June 19, 2020, Appellant filed a separate notice of appeal for each of the above-captioned docket numbers. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court responded by filing an order that incorporated its prior Rule 1925(a) opinion, which it had previously filed on September 18, 2019. Order, 9/6/20. Meanwhile, this Court *sua sponte* consolidated Appellant's appeals. Order, 7/13/20.

Appellant raises the following issues:

1. Did the [trial] court err by granting the Commonwealth's motion to join the trial of the three cases and by denying [Appellant's] motions for severance?

2. Did the [trial] court err in refusing to grant a new trial based upon prosecutorial misconduct in this consolidated case?

3. Did the [trial] court err in permitting the Commonwealth to introduce photographs not dealing with violations of Section 6312 of the Crimes Code involving sexual activity or simulation of the same introduced over objection and not provided in discovery to be presented to the jury?

_____

[12] The records and dockets do not reflect any grant of reconsideration.

Appellant's Brief at 14.

## **Joinder of Three Cases**

In support of his first issue, Appellant argues that "it is undeniably clear" that the offenses charged at each docket number were "separate and distinct." *Id.* at 18. Specifically, Appellant argues that the charges at docket no. 728-2016 were for offenses that occurred between 2012 and 2015 which involved three distinct victims. *Id.* at 25-26. In contrast, Appellant claims that the charges at docket no. 808-2016, which also occurred between 2012 and 2015, are dissimilar because the alleged offenses only involved one distinct victim. *Id.* at 26.

Appellant also contends that joinder of all the cases resulted in prejudice because "the cumulative effect of the evidence would tend to prove that [he] had a propensity to commit crimes and that the jury would be incapable of separating the evidence of one crime from the other." *Id.* at 18. Appellant notes that he could have had "separate and conflicting defenses" if the cases were tried separately. *Id.* at 19. Specifically, Appellant claims that if tried separately, he would have had a defense for the charges at docket no. 2391-2015, because "56 of the 60 photos did not show any sexual activity or simulation of sexual activity." *Id.* at 20. Appellant concludes that joinder resulted in him losing "the benefit of having the option to testify or not to testify." *Id.* at 21. In support, Appellant primarily relies on ***Commonwealth***

*v. Kasko*, 469 A.2d 181 (Pa. Super. 1983). In sum, Appellant argues joinder was improper because of (1) separate and distinct offenses, and (2) prejudice.

The Commonwealth counters that in child sexual assault cases, "details that have been important in evaluating [joinder] include the ages of the children, race and gender of the children, time period when the offenses occurred, where the sexual assaults occurred, the type of sex acts and how they occurred, and any other factors" establishing shared similarities. Commonwealth's Brief at 6-7 (citations omitted). In the Commonwealth's view, joinder was appropriate because all of the offenses occurred between 2012 and 2015, involved female Caucasian minors, and occurred primarily at Appellant's home or at a nearby park. *Id.* at 7-8.

The trial court reasoned, without elaboration, that "joinder of the three cases was appropriate as the minor victims as well as the evidence was similar in each case." Trial Ct. Op. at 2.

We review the trial court's joinder for an abuse of discretion. ***Commonwealth v. Brookins***, 10 A.3d 1251, 1255 (Pa. Super. 2010) (stating, "[j]oinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion" (citations omitted)).

Pennsylvania Rule of Criminal Procedure 582 states that "[o]ffenses charged in separate indictments or informations may be tried together if . . . the evidence of each of the offenses would be admissible in a separate trial

for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1). Pennsylvania Rule of Criminal Procedure 583 states that the "court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

This Court has set forth the following three-part test for evaluating whether joinder is appropriate in matters involving different acts or transactions:

> (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Brookins*, 10 A.3d at 1256 (citations omitted and formatting altered); *see also* Pa.R.Crim.P. 583.

In *Kasko*, the defendant was charged in two separate criminal cases of various sexual offenses.[13] *Kasko*, 469 A.2d at 183. One case involved a minor niece of the defendant's girlfriend, and the offenses occurred in "February or March of 1980," in front of the girlfriend, and at the girlfriend's home. *Id.* The other case involved offenses between December 1980 and

---

[13] We acknowledge that *Kasko* was decided before the effective date of Rule 583, which was formerly known as Rule 1128. *See* Pa.R.Crim.P. 583.

January 1981, against the defendant's own minor niece and nephew at his residence. *Id.* at 183-84. The trial court denied the defendant's motion to sever, the defendant was convicted, and the defendant appealed that ruling. *Id.* at 184.

The *Kasko* Court held that joinder was permissible if the evidence for the other crimes tended to establish motive, intent, absence of mistake or accident, identity, or a common scheme. *Id.* In *Kasko*, the Court reasoned that the record did not establish the aforementioned factors. *Id.* With respect to common scheme, the Court acknowledged that although the two cases involved children, a family link, and similar misconduct, "the two cases were separated by a substantial period of time and involved different victims," which involved both genders. *Id.* at 185. The *Kasko* Court therefore reversed and remanded. *Id.* at 186.

More recently, in *Commonwealth v. Smith*, 47 A.3d 862 (Pa. Super. 2012), the defendant challenged the trial court's consolidation of charges that he raped two minors. *Smith*, 47 A.3d at 863, 866. In affirming, the *Smith* Court summarized the following relevant cases:

> In [*Commonwealth v. Newman*, 598 A.2d 275 (Pa. 1991)], the Pennsylvania Supreme Court held that consolidation was proper where: 1) both rapes occurred in the x-ray department; 2) each occurred late at night when [the defendant] was the only technician on duty; 3) both victims were females suffering from head injuries; 4) both victims were half the size of [the defendant]; 5) [the defendant] began kissing the victims, hugging the victims, and fondling the victims' breasts before climbing onto the examination table and raping them.

In [**Commonwealth v. Keaton**, 729 A.2d 529 (Pa. 1999)], the Pennsylvania Supreme Court again held that consolidation was proper where:

> 1) the offenses were committed over a period of less than six months; 2) each was committed at night; 3) in each case, [the defendant] forced his victim into an abandoned house; 4) the abandoned houses were all in the same neighborhood in which [the defendant] and the victims lived; 5) the abandoned houses were within a two-block radius of each other; 6) each offense involved a combination of bondage or strangulation of the victim; 7) each offense involved the rape of the victim; and 8) all victims shared similar personal characteristics: all were black females in their late twenties or thirties, all were acquainted with [the defendant], and all were crack cocaine addicts.

In [**Commonwealth v. Hughes**, 555 A.2d 1264 (Pa. 1989)], the Pennsylvania Supreme Court found that the crimes shared sufficient similarities in their details warranting consolidation, where:

> 1) both crimes involved young females; 2) both victims were non-Caucasian; 3) both crimes occurred during the daytime; 4) both crimes took place within a four-block radius; 5) both crimes took place within a five-minute walk from [the defendant's] home; 6) both crimes involved circumstances in which the victim was lured or strong-armed off the street; 7) both victims were taken to upstairs bedrooms of vacant buildings; 8) in both crimes [the defendant] ordered the victims to undress; 9) both crimes involved rape, other sex acts, and manual strangulation; and 10) both crimes involved circumstances in which [the defendant] and the victims previously were acquainted.

In contrast, the Supreme Court held that the details were not sufficiently similar to warrant consolidation where:

> 1) the victims were of totally different ages . . . ; 2) the weapons used were not identical; and, 3) nothing distinctive separated the two crimes involved from other street crimes 4) the rape charged occurred in a garage while the other occurred in [the defendant's] apartment; 5) while both rapists wore sunglasses, the rapist here wore rose colored,

light tinted sunglasses and, in the other he wore dark sunglasses; and, 6) the first rape also involved a robbery, violence by choking, and tying the victim, but there were no such incidents in the second rape.

*Commonwealth v. Patterson*, [399 A.2d 123, 127 (Pa. 1979)].

*Smith*, 47 A.3d at 867-68 (some citations omitted and formatting altered).

The *Smith* Court summarized that "[o]ur Supreme Court previously has held that consolidation was appropriate where the ages and races of the victims were similar, where the assaults occurred close in time and at similar locations, where the assaults were achieved through similar means, and where the assaults involved similar crimes." *Id.* at 869 (citations omitted).

With respect to the undue prejudice prong, the "appellant bears the burden of establishing such prejudice." *Commonwealth v. Dozzo*, 991 A.2d 898, 901 (Pa. Super. 2010) (citation omitted).

Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime.

The prejudice of which Rule 583 speaks is, rather, that which would occur if the evidence tended to convict the [defendant] only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Dozzo*, 991 A.2d at 902 (citations omitted and formatting altered). Having summarized the relevant law regarding Appellant's challenges to separate and distinct offenses and prejudice, we address the merits.

Instantly, with respect to separate and distinct offenses, after careful consideration, we conclude the facts of this case are closer to the facts of *Newman*, *Keaton*, and *Hughes*, and distinguishable from the facts in *Kasko* and *Patterson*. Similar to the facts in *Newman*, *Keaton*, and *Hughes*, the instant victims were all minor Caucasian females, who resided next to or spent significant time with Appellant, and almost all of the offenses occurred at Appellant's home with some offenses occurring at a nearby park. *See Smith*, 47 A.3d at 867-68. This case does not involve victims of "totally different ages" like in *Patterson* or different genders as in *Kasko*. *See Patterson*, 399 A.2d at 127; *Kasko*, 469 A.2d at 183. Further, unlike the offenses that occurred in two distinct timeframes in *Kasko*, the instant offenses all occurred between January 2012 and August 2015. *See* Information Docket No. 728-2016, 5/9/16; Information, Docket No. 808-2016, 5/9/16; Information, Docket No. 2391-2015, 12/28/15. Although the offenses at docket no. 2391-2015 occurred starting in January 2013, *Kasko* did not involve non-overlapping timeframes. *See Kasko*, 469 A.2d at 183. In sum, because of the factual similarities including age, ethnicity, and gender of the victims, as well as the location, timeframe, and similarity of the offenses, the evidence of each of the offenses at each of the instant docket numbers would be admissible in a separate trial for the other. *See Smith*, 47 A.3d at 869; *Brookins*, 10 A.3d at 1256; *see also* Pa.R.Crim.P. 582(A)(1).

With respect to prejudice, Appellant did not identify the defense he would have raised for fifty-six of the photos at docket no. 2391-2015. ***See*** Appellant's Brief at 20-21. If Appellant's defense was that he would have testified that the fifty-six photos "did not show any sexual activity or simulation," ***see*** Appellant's Brief at 20, Appellant did not explain how he was prejudiced.[14] ***See Brookins***, 10 A.3d at 1256; ***see also*** Pa.R.Crim.P. 583. For these reasons, Appellant has not established the trial court abused its discretion by joining the three cases together. ***See Brookins***, 10 A.3d at 1255.

## Prosecutorial Misconduct

In support of his second issue, Appellant argues prosecutorial misconduct occurred during the prosecutor's closing arguments. We briefly state the relevant background. During her closing argument, the prosecutor argued as follows with respect to the two password-protected files discussed above:

> Despite the fact that [Appellant] tried to make it seem like he was super cooperative with law enforcement the whole way through and would have given consent to have them take all of his stuff, all of his electronics, you also heard evidence that those are password-protected, they couldn't be broken, and [Appellant] refused to give that password. So think about that for a second. He had other photos on his computer, normal family photos, even some of his child porn collection he had on that computer that weren't passcode-protected. So it kind of begs the question if

_____

[14] To the extent Appellant's defense could be construed as a challenge to the sufficiency of evidence, we address it below.

- 16 -

those photos weren't password-protected, what exactly was on there that he really didn't want anyone to see?

N.T. Trial, 8/16/18, at 34-35.

At the end of her closing, the prosecutor argued as follows:

In a few moments you are going to get a verdict slip. It is going to look like this. The court is going to give it to you, and you're going to be asked to record your verdict on it. I want you to take that verdict slip, go back to the deliberation room and next to the charge that says involuntary deviate sexual intercourse, you check guilty and you tell these girls it is time for the shame to end. And next to the count that says aggravated indecent assault, you check guilty and you tell these girls that there are no more secrets. It is time to end. And next to every other count, you check guilty and you tell the girls it is time for the healing to begin. On behalf of [each of the named minor victims] and on behalf of the citizens of Blair County find him guilty of all the charges. Thank you.

*Id.* at 51.

At sidebar, the trial court and counsel discussed as follows:

[Appellant's counsel]: . . . The comment that [Appellant] refused to give the password, I think that's an unfair comment on his right to remain silent.

[Assistant District Attorney]: That was in the record, Judge.

[The court]: . . . The court admitted that into evidence. It was admitted after he said that he cooperated apparently fully with the investigation. The court left that in in cross-examination about that statement of [Appellant]. Otherwise, it would not have been left in.

[Appellant's counsel]: Secondly, dealing with the pornography charges, you told them absolutely the definitions were met, the elements were met. So you are directing a verdict.

[Assistant District Attorney]: Judge, I think that is always . . . we are always directing a verdict.

- 17 -

[Appellant's counsel]: If you would have said I submit, I would agree with you. . . . The last four or five [the assistant district attorney] said that you check guilty on each of those. You were telling [the jury] again what to do instead of saying I submit.

[Assistant District Attorney]: That's a course of argument and I have done that multiple times with the Commonwealth.

[The court]: The court will make it abundantly clear that it is their findings of fact, not any counsel or the court's, which prevail, and I will make that clear that I think if, in fact, that there was any impropriety, I'm not certain that there are, in fact, I think there wasn't, but if there was, it will be overcome by that.

[Assistant District Attorney]: Okay. Thank you.

[Appellant's counsel]: My experience has been to say I submit. It's a different ball game.

*Id.* at 52-53 (third ellipses in original and formatting altered). As set forth above, Appellant's counsel did not request any remedy.

The trial court charged the jury, which included an instruction that the jury is "the sole judge[] of the facts." *Id.* at 71. Further, the court instructed the jury that it "should consider the statements and arguments of counsel carefully even though they are not binding on [it] and are not evidence" and the "speeches of counsel are not part of the evidence." *Id.* at 71-72. Having summarized the relevant background, we next summarize Appellant's argument in support of his second issue.

Appellant argues that the prosecutor's comment on his refusal to turn over the password was an unfair comment on his right to remain silent. Appellant's Brief at 30. With respect to the prosecutor's assertion that all of the elements of the pornography offenses were met, Appellant asserts the

prosecutor "was directing the verdict" by asking the jury to "check guilty." *Id.*

Appellant contends the prosecutor should have used phrases such as, "I submit" or "I suggest to you" in her closing argument because it is improper for a prosecutor to offer a personal opinion on guilt. *Id.*

We review this claim for an abuse of discretion by the trial court. ***Commonwealth v. Jones***, 191 A.3d 830, 835 (Pa. Super. 2018).

> [W]ith specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict. The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. Moreover, the prosecutor is permitted to fairly respond to points made in the defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation.

*Id.* at 835-36 (citation omitted). In order to preserve such a claim, the defendant must object and request a remedy. *Id.* at 836 (citing ***Commonwealth v. Manley***, 985 A.2d 256 (Pa. Super. 2009)). The defendant's "failure to request a remedy such as a mistrial or curative

instruction" constitutes waiver, even if the defendant objects. *Id.* (citation omitted). We add that "the jury is presumed to have followed the trial court's instructions." *Commonwealth v. Williams*, 863 A.2d 505, 517 (Pa. 2004) (citation omitted).

In *Commonwealth v. Patton*, 936 A.2d 1170, 1174 (Pa. Super. 2007), the prosecutor, during her closing argument, asked the jury "to find a verdict of guilty of murder in the first degree and send a message back that [the eyewitness] did the right thing. . . . [A]nd the second message I want to send to the defendant is to tell him he can't get away with murder." *Patton*, 936 A.2d at 1174 (citation omitted). The defendant, on appeal to this Court, argued the prosecutor's "send a message" comment was improper. *Id.* at 1175. The *Patton* Court disagreed, reasoning that our Supreme Court "specifically held that such statements are permissible in criminal trials." *Id.* (citing *Commonwealth v. Peterkin*, 649 A.2d 121 (Pa. 1994)).

Instantly, as set forth above, although Appellant's counsel objected, counsel did not request a remedy. *See Jones*, 191 A.3d at 836. Therefore, Appellant failed to preserve his claim for appellate review. *See id.*

Regardless, Appellant has not established that the Commonwealth's closing argument prevented the jury from weighing "the evidence objectively and render[ing] a true verdict." *See id.* at 835. We agree that Appellant opened the door by testifying that he cooperated with the police, which permitted the Commonwealth to elicit testimony that Appellant refused to

- 20 -

disclose the password to the two files. *See* N.T. Trial, 8/15/18, at 113. In context, the prosecutor's comment was a fair response to Appellant's assertion that he cooperated with the police. *See Jones*, 191 A.3d at 835-36. Next, the prosecutor's comments to find Appellant guilty fell within the permissible range of oratorical flair, similar to the prosecutor's "send a message" comment at issue in *Patton*. *Cf. Patton*, 936 A.2d at 1175. Finally, the trial court instructed the jury that it was the sole judge of the facts and that counsel's arguments and speeches did not bind the jury. *See* N.T. Trial, 8/16/18, at 71-72. Because we presume that the jury followed the trial court's instructions, *see Williams*, 863 A.2d at 517, Appellant has not established an abuse of discretion. *See Jones*, 191 A.3d at 835.

## Motion for Demurrer

For his final issue, Appellant argues the trial court erred by denying his motion for a *demurrer* to his convictions at docket no. 2391-2015 for sexual abuse of children under Sections 6312(b)(1) and (d). Appellant's Brief at 33. Appellant argues that the more than fifty photographs of A.G. "depicted nudity [but] did not depict any sexual activity or simulation of sexual activity." *Id.* Therefore, Appellant reasons that because "a sexual act [or] simulation of such an act" is an element, the trial court should have granted his *demurrer*. *Id.* at 34. Appellant raises the same argument with respect to the

photographs underlying counts 26 through 29 at docket no. 728-2016.[15] *Id.* at 35.

In the Commonwealth's view, the photographs established Appellant violated Section 6312(b)(1) and (d). Commonwealth's Brief at 26. The trial court's opinion did not address Appellant's *demurrer*, *i.e.*, motion for judgment for acquittal.

The standard of review for a motion for judgment of acquittal follows:

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. Therefore, in usual circumstances, we apply the following standard of review to sufficiency claims which arise in the context of a motion for judgment of acquittal:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the

_____

[15] Appellant also briefly asserts that the Commonwealth never provided him with the photographs at issue in discovery. Appellant's Brief at 36. The Commonwealth, however, disclosed the photos to Appellant. *See* N.T. Trial, 8/15/18, at 44 (explaining that Commonwealth cannot turn over child pornography as part of discovery but must make it available to Appellant for inspection), 115. Accordingly, the photographs at issue were not transmitted to this Court as part of the certified record.

benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Stahl*, 175 A.3d 301, 303-04 (Pa. Super. 2017) (citations omitted and formatting altered). "In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder." *Commonwealth v. Fabian*, 60 A.3d 146, 150-51 (Pa. Super. 2013) (citation omitted).

Section 6312(b)(1) and (d) follows:

**(b) Photographing, videotaping, depicting on computer or filming sexual acts.—**

(1) Any person who causes or knowingly permits a child under the age of 18 years to engage in a prohibited sexual act or in the simulation of such act commits an offense if such person knows, has reason to know or intends that such act may be photographed, videotaped, depicted on computer or filmed.

\* \* \*

**(d) Child pornography.—**Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

18 Pa.C.S. § 6312(b)(1), (d). Section 6312(g) defines "prohibited sexual act" as "[s]exual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." *Id.* § 6312(g).

In ***Commonwealth v. Davidson***, 938 A.2d 198 (Pa. 2007), our Supreme Court resolved the constitutionality of Section 6312(d), specifically whether "prohibited sexual act" was vague. ***Davidson***, 938 A.2d at 213. The ***Davidson*** Court explained that "[a]ll that the Commonwealth must prove in a situation where a defendant is found in possession of nude images of children not engaged in any other prohibited sexual act under Section 6312[(g)], is that the nudity in the image is depicted for sexual stimulation or gratification."[16] ***Id.***

> Moreover, an ordinary person can certainly understand what conduct is prohibited and would have no need to guess at the meaning of the term "nudity" under Section 6312[(g)]. The "nudity" qualifier does not create a subjective standard requiring people to guess at its meaning. The content, focus and setting of the images create an objective standard which allows a person of common intelligence to know what images are prohibited under the statute. . . . [C]ommon sense and human experience dictate that an individual of ordinary intelligence, not a mind reader or a genius, can identify whether a photograph of a nude child depicts "nudity" for the purpose of sexual stimulation or gratification.

***Id.*** at 213-14. In sum, it is for the fact-finder to determine whether a photograph falls within the scope of Section 6312(g), and violates Section 6312. ***See id.***; ***accord Commonwealth v. Tiffany***, 926 A.2d 503, 512 (Pa. Super. 2007) (affirming fact-finder's determination that photographs at issue depicted nudity for sexual stimulation or gratification).

---

[16] The ***Davidson*** Court was interpreting former Section 6312(a), which was subsequently replaced by the substantively identical Section 6312(g).

Instantly, Appellant overlooks that Section 6312's definition of "sexual act," *i.e.*, a "prohibited sexual act [or] simulation of such an act," includes "nudity if such nudity is depicted for the purpose of sexual stimulation or gratification . . . ." 18 Pa.C.S. § 6312(b)(1), (d), (g). It was for the jury to determine whether the challenged photographs depicted nudity for the purpose of sexual stimulation or gratification for convictions under Section 6312(b)(1) and (d). **See Davidson**, 938 A.2d at 213-14; **Tiffany**, 926 A.2d at 512. The jury answered the question in the affirmative, and on this record there is no basis for this Court to substitute its own judgment for the jury.[17] **See Fabian**, 60 A.3d at 150-51. Accordingly, Appellant has not established the trial court erred by denying his motion for acquittal. **See Stahl**, 175 A.3d at 303-04. For these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

---

[17] Appellant did not identify which photographs at docket no. 2391-2015, "did not depict any sexual activity or simulation of sexual activity." **See** Appellant's Brief at 22. Although Appellant specifically identified certain photographs at docket no. 728-2016, none of the challenged photographs at either docket number were disclosed to this Court.

Date:  9/10/2021