399 A.2d 123

COMMONWEALTH of Pennsylvania, Appellee,

v.

Roy PATTERSON, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 18, 1979.

Decided March 16, 1979.

Donald C. Marino, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Maxine J. Stotland, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

On March 11, 1974, Roy Patterson, appellant, was convicted by a jury of rape, robbery and aggravated assault. Postverdict motions were filed. The court denied an arrest of judgment but granted a new trial. The Commonwealth appealed the order to the Superior Court, and that court,[1] by a vote of four to three,[2] reversed and remanded for consideration of the remaining issues raised in the motions. Patterson filed a petition for allowance of appeal which was granted.

Patterson's convictions were based on events which occurred on February 7, 1974, at approximately 2:30 a. m. At that time, the victim, a young woman of slight build, left her apartment on South 47th Street in Philadelphia and began walking to a grocery store at 49th Street and Chester Avenue about two blocks away. When she reached 48th Street and Chester Avenue, she asked a man, standing on the corner,[3] if the store was open, and he responded. She continued toward the store. When she determined the store was closed, she began to return to her home. She noticed the man who had been standing at the corner had crossed the street and begun to walk toward her. They met in the middle of the block between 48th and 49th Streets on Chester Avenue, and the man began a conversation. The victim continued walking, and the man began to walk parallel to her and in her direction. Although some twelve to fifteen feet from her, he continued to converse[4] with her. Finally, the man grabbed her by the mouth with his left

1. *Commonwealth v. Patterson,* 247 Pa.Super. 199, 372 A.2d 7 (1977).

2. Dissenting opinion, Hoffman, J., joined by Jacobs and Spaeth, JJ., supra, 247 Pa.Super. at 202, 372 A.2d at 8.

3. She did so from the middle of the street since walking there was easier due to snow.

4. The man asked questions, such as the woman's name, age, residence and who resided with her. He also asked if he could go home with her, and she replied no.

hand and held an ice pick to her throat. He said: " . . . don't scream," and asked how much money she had. She responded: "five dollars," and he then walked her through an alley and into a garage. There, the man raped her, choked her until she blacked out, stole the five dollars from her, and tied her hands before leaving the garage.

At trial, the victim testified the man who raped her was wearing "rose colored, light tinted" sunglasses ("the type you can see through"), an "orange or red cap," and "a tan or brown coat, light colored." She further testified that she had described the man to police as a black with medium skin, five foot nine inches tall, weighing one hundred and seventy five pounds, and "in his twenties." She identified Patterson as the assailant.

During the trial, the Commonwealth called as a witness another woman who was also a victim of a rape. She testified, over objection, to the circumstances of that crime and identified Patterson as the rapist. This testimony was introduced for the purpose of identifying Patterson as the rapist in the case on trial.

▇ The post-verdict motion court concluded the trial court erred in allowing testimony of the second rape and granted a new trial. The majority of the Superior Court concluded the post-verdict motion court erred in granting a new trial and ruled the challenged testimony was admissible for the purpose of establishing the identity of the rapist in the case being tried.[5]

In *Commonwealth v. Fortune*, 464 Pa. 367, 372–73, 346 A.2d 783, 786 (1975), we said:

"As a general rule, evidence of a distinct crime, except under special circumstances, cannot be introduced against

---

5. Despite the Commonwealth's argument to the contrary, the issue is not waived pursuant to *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). While only boiler-plate motions were filed, the issue was argued and briefed before the post-verdict motion court. *Commonwealth v. Pugh*, 476 Pa. 445, 383 A.2d 183 (1978). See *Commonwealth v. Hitson*, 482 Pa. 404, 393 A.2d 1169 (1978); *Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977); *Commonwealth v. Smith*, 474 Pa. 559, 379 A.2d 96 (1977); *Commonwealth v. Perillo*, 474 Pa. 63, 376 A.2d 635 (1977).

a defendant who is being tried for another crime because the fact of commission of one crime is not proof of the commission of another and the effect of such evidence is to create prejudice against the defendant in the jury's mind. [Citations omitted.] But, as noted in *Commonwealth v. Wable*, supra, 382 Pa. [80], 84, 114 A.2d [334], 336, 337, 'sometimes there exist . . . "special circumstances" which operate as exceptions to the general rule, and bring the case within the equally well established principle that *evidence of other crimes is admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to* prove the others or *establish the identity of the person charged with the commission of the crime on trial,*—in other words *where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.*' " [Emphasis in original deleted. Emphasis added.]

■ Furthermore, as Judge Hoffman pointed out while relying on *McCormick on Evidence*, § 190, at 448–451 (2nd Ed. 1972), supra n. 2, *Commonwealth v. Fortune*, supra, and *Commonwealth v. Wable*, supra, indicate that, where, as here, the evidence of another crime is offered "to establish identity" or "to show the accused is the person who committed" the crime charged, its admissibility is dependent on a logical connection, namely a showing that the evidence also falls within another exception to the general rule of inadmissibility, such as a common scheme, plan or design or a "nearly identical method"[6] or motive. See *McCormick on Evidence*, supra at 451. Accordingly, we have examined the

---

**6.** Judge Hoffman stated the requirement as an "identical *modus operandi.*" We believe such terminology is too restrictive and, hence, prefer the terminology used in the text and in *McCormick on Evidence*, supra at 449. The terminology is there further explained as requiring something more than the commission of the same class of crime, such as theft, namely something unusual or distinctive "as to be like a signature." Cf. *Commonwealth v. Fortune*, supra, 464 Pa. at 373–74, 346 A.2d at 786.

testimony of the victim of the other rape to determine if the common plan, scheme, or design or nearly identical method was present.[7]

The second victim, a middle-age woman, testified that, on February 12, 1974, she got off a trolley alone at 47th Street and Chester Avenue in Philadelphia at 2:30 a. m. on her way home to 4701 Chester Avenue; that, after she walked up the steps, put a key in the door, and opened it, she heard footsteps; that she turned around and saw a black man wearing dark sunglasses and approaching her; that, as the man neared, she tried to get the key out of the door and lock it; that the man said: "Don't scream"; that she threw her pocketbook at him and said: "Here's my money[,] I haven't got much"; that he said: "I don't want money, I want—"; [8] that the man then took a gun from his pocket and put it at her heart and said: "You are going with me" to an alley about a half block away; that she asked not to be taken there as it was all cement, but to be taken to a hotel; [9] that he took her to his apartment and raped her despite her pleas; that thereafter he let her go and she went home where the police had already arrived; and, that she then assisted police in locating the man's apartment where she identified Patterson as the assailant.

The majority of the Superior Court relied on the following similarities to determine the logical connection was present:

". . . the prosecutrix was accosted approximately the same time of night as the other rape victim, the two crimes were only five days apart and occurred in the same two-block area, and the attacker of both women wore sunglasses even though it was nighttime. The prosecutrix was taken into a garage in an alley; the other victim was being taken into an alley at gunpoint when she managed to talk her assailant into taking her indoors."

7. The evidence does not tend to establish motive or any other exception allowing admission.

8. The victim indicated the man then used a "four-lettered word."

9. The victim explained by requesting this, she hoped to obtain an opportunity to encounter help.

While recognizing these similarities make this case one in which application of the relevant law is difficult, we do not believe the similarities, when considered with the dissimilarities, support a conclusion that the logical connection is present.

In *Commonwealth v. Fortune*, supra, we pointed out certain dissimilarities in determining evidence of other crimes should not have been admitted. The dissimilarities there included: (1) the victim of the crime for which Fortune was on trial was "older and larger" than the victims, namely "little boys" and "little kids," of the other crimes; (2) the weapons used in the crimes were not identical; and, (3) nothing distinctive in the crimes separated them from other street crimes.

■ Instantly, as in *Commonwealth v. Fortune*, supra, the dissimilarities included: (1) "the victims were of totally different ages and sexual attractiveness"; [10] (2) the weapons used were not identical; and, (3) nothing distinctive separated the two crimes involved from other street crimes. Furthermore, although *Commonwealth v. Fortune*, supra, relied on a lack of specific times and dates for the other crimes which is not present here, the same result is warranted here because other dissimilarities, not present in *Commonwealth v. Fortune*, supra, exist here. They are: (1) the rape charged occurred in a garage while the other occurred in Patterson's apartment; [11] (2) while both rapists wore sunglasses, the rapist here wore "rose colored, light tinted" sunglasses and, in the other he wore "dark" sunglasses; and, (3) the first rape also involved a robbery, violence by chok-

10. The trial court who saw the victims at trial provided this information in its opinion explaining the grant of a new trial.

11. While the Commonwealth seeks to have this disregarded by reconciling the difference with the argument that the assailant in the second rape allegedly wanted to take the victim to an alley before being asked to go to a motel, we are not persuaded to do so.

In connection with locations, the assailant attempted to obtain permission to accompany the first victim into her home before attacking and such was not attempted with the second victim.

ing, and tying the victim, but there were no such incidents in the second rape.

Because of the dissimilarities, we are not persuaded a nearly identical method or a common scheme, plan, or design was established.

The order of the Superior Court is reversed, the order of the Court of Common Pleas is reinstated, and the record is remanded.

MANDERINO, J., filed a concurring opinion.

ROBERTS and NIX, JJ., filed a dissenting opinion.

MANDERINO, Justice, concurring.

I join in the result reached by the majority because the proof of the second rape did not naturally tend to establish the identity of the perpetrator of the first rape. This second rape was not a distinct or "signature" crime which would have proved the identity of appellant as the person who committed the first rape. *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). Evidence of the second crime is therefore inadmissible.

ROBERTS, Justice, dissenting.

Once again, a majority of this Court condones failure to comply with Pa.R.Crim.Proc. 1123(a) and *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). *Blair* made clear that, consistent with the mandate of Rule 1123(a), this Court will consider only those issues raised in written post-verdict motions. In *Commonwealth v. Roach*, 477 Pa. 379, 381, 383 A.2d 1257, 1258 (1978), I expressed the view that *Blair* must be given effect beginning March 1, 1975, the effective date of *Blair's* publication in the Atlantic Second advance sheets. See also *Commonwealth v. Hitson*, 482 Pa. 404, 408, 393 A.2d 1169, 1171 (1978) (Roberts, J., joined by Nix, J., concurring). Appellant filed boilerplate post-verdict motions on March 12, 1975. I would hold under Rule 1123(a) and *Blair* that appellant has failed to preserve his objection to admission of evidence that appellant committed another rape.

I must also disagree that evidence of the other rape was inadmissible. The plurality is correct that admissibility of the testimony concerning the subsequent rape depends upon a "logical connection" with the alleged rape. But the plurality incorrectly concludes that no such connection exists here. Both offenses occurred within five days, near the intersection of 47th Street and Chester Avenue, Philadelphia, and at the same early morning hour. Each assailant trailed his victim, confronted the victim with a dangerous weapon, and, once the attack began, sought to take the victim to a nearby alley. Despite the suggestion of the plurality, it is wholly irrelevant to this crime of violence that " 'the victims were of totally different ages and sexual attractiveness.' " 484 Pa. at 380, 399 A.2d at 127, quoting opinion of the trial court. Proof of the subsequent rape in this case " 'will naturally tend to show that the accused is the person who committed the other,' " *Commonwealth v. Fortune*, 464 Pa. 367, 373, 346 A.2d 783, 786 (1975), and was properly allowed.

I dissent and would affirm the order of the Superior Court.

NIX, Justice, dissenting.

In reaching the merits of appellant's allegation that the trial court erred in allowing testimony concerning the second rape, this Court once again condones defense counsel's flagrant noncompliance with Pennsylvania Rule of Criminal Procedure 1123(a) and *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), which when read together, should mean that issues not specifically raised in written post-trial motions will not be considered by the trial court or by this Court on appeal. By perpetuating in the instant case the exception purportedly created by *Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977) and *Commonwealth v. Perillo*, 474 Pa. 63, 376 A.2d 635 (1977), the majority creates yet another precedent which I fear will ultimately lead to wholesale disregard of Rule 1123 and *Blair* by bench and bar. This concern, among others, prompted me to dissent on this same point in *Commonwealth v. Pugh*, 476 Pa. 445, 453, 383 A.2d 183, 187 (1978) (Nix, J., dissenting). See also

*Commonwealth v. Waters*, 477 Pa. 429, 384 A.2d 234 (1978). Once again I must dissent.