COMMONWEALTH of Pennsylvania, Appellee

v.

Andrew SMITH, Appellant.

Superior Court of Pennsylvania.

Submitted March 19, 2012.

Filed June 19, 2012.

Jules Epstein, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

Andrew Smith ["Appellant"] appeals from the January 28, 2011 judgments of sentence imposed after a jury found him guilty of two counts of rape of a child under thirteen,[1] two counts of unlawful

---

* Retired Senior Judge assigned to the Superior Court.

1. 18 Pa.C.S.A. § 3121(c).

contact with a minor,[2] two counts of corruption of the morals of a minor,[3] and one count of aggravated indecent assault.[4] We affirm.

The trial court aptly summarized the factual history as follows:

J.D.R. (a minor) lived with her mother in Florida during the school year and with her father in Philadelphia during the summer months. During the summer of 2004, J.D.R. first met [Appellant] when their karate classes conducted a demonstration at a fundraiser benefit. Their relationship progressed over the next year, and by the summer of 2005, twelve year-old J.D.R. began considering [Appellant] her boyfriend. At approximately 1 a.m. one summer evening in 2005, J.D.R. spoke on the phone with Appellant. During this conversation, J.D.R. told [Appellant] she was visiting her grandmother's house in Southwest Philadelphia and spending the night there. Appellant asked J.D.R. if he could come over. At first, J.D.R. said "no," but after [Appellant] persisted, she agreed.

When he first arrived, Appellant and J.D.R. talked and kissed. Later, [Appellant] tried to unbutton J.D.R.'s pants, but she initially said "no." [Appellant] told J.D.R., "I want to do this because I love you, and I want to show you how I love you." J.D.R. continued to say "no" and Appellant backed off. However, later on, [Appellant] attempted to unbutton J.D.R.'s pants again. When J.D.R. objected, [Appellant] became angry and began to leave. When Appellant got up to leave, J.D.R. said, "Okay, I'll do it. Okay." [Appellant] then penetrated J.D.R.'s vagina with his fingers and then his penis. During penetration, J.D.R.

asked [Appellant] to stop because she was in severe pain, but he refused. Subsequent to her experience, J.D.R. never revealed she had sex with [Appellant] until approximately one-and-a half years later.

Approximately two months later, [Appellant] had sex with G.O. Like J.D.R., G.O. was 12 years old. [G.O.] first met Appellant at karate class when she was six years old and considered him a family friend for years. On the morning of September 27, 2005, G.O. was at home sleeping when she heard a knock on the door. G.O. got up, opened the door, and saw [Appellant]. Appellant told G.O. that he came to say goodbye because he was leaving Philadelphia. Appellant then asked G.O. if he could use the bathroom and G.O. said yes. [Appellant] proceeded upstairs to the second floor bathroom.

After a few minutes, G.O. thought [Appellant] was taking too long to return so she called up to him. [Appellant] did not answer so G.O., went upstairs to find him. G.O. found [Appellant] in her bedroom. When questioned, Appellant said he was just looking at her bedroom. Appellant then told G.O. to give him a hug, but G.O. refused and said "let's go downstairs." Instead, [Appellant] grabbed G.O., hugged her, and said he wanted G.O. to remember him. Still holding G.O. in an embrace, Appellant positioned G.O. between his legs and lowered her onto the bed. [Appellant] put G.O. on her back while he kept his forearms around her. [Appellant] told G.O. that he would miss her and wanted to give her "stuff" to remember him by. [Appellant] kissed G.O.'s neck and pulled her pajama pants down. G.O.

2. 18 Pa.C.S.A. § 6318(a)(1).

3. 18 Pa.C.S.A. § 6301(a)(1).

4. 18 Pa.C.S.A. § 3125(a)(1).

told Appellant to stop, but he ignored her. [Appellant] penetrated G.O.'s vagina with his penis as she lay crying. During the penetration, G.O.'s cell phone rang downstairs. [Appellant] "popped up" from the bed. G.O. then pushed [Appellant] off her, went downstairs, and answered her cell phone. While she was on the phone, [Appellant] left the house. G.O. did not immediately report the rape because she was scared and did not trust anyone. Approximately one year later, G.O. told her mother what had happened because she heard [Appellant] was returning to Philadelphia. G.O.'s mother took her to the hospital and filed a police report.

Trial Court Opinion ["T.C.O."], 10/31/11, 2–4 (citations to notes of testimony and footnotes omitted).

At his jury trial, Appellant denied raping the victims. Notes of Testimony ["N.T."], 7/28/10, at 132–34. The jury rejected Appellant's testimony, finding him guilty of all charges. On January 28, 2011, Appellant was sentenced to seven to fourteen years of incarceration for the rape of G.O., to run concurrently with the prison terms imposed for all of the other crimes, including those committed against J.D.R. This timely appeal followed.

Appellant raises two issues for our review:

1. Did not the court err in precluding the defense from using the contents of an email/instant message [Exhibit D–8] sent by one of the two complaining witnesses, J.D.R., to establish that the witness had in fact recanted, as the evidence at trial sufficiently authenticated the document and the preclusion of use of its contents denied [A]ppellant the right to present a defense and

the right to confront adverse witnesses, and to prove an inconsistent statement, as guaranteed by the United States and Pennsylvania Constitutions?

2. Did not the court err in approving consolidation of the two cases for trial in one proceeding, as the evidence failed to establish a common plan, there were significant differences between the two alleged courses of conduct, evidence of each event would not have been admissible at trial for the other, and the evidence of each was therefore only proof of propensity?

Appellant's Brief at 5.

■ Appellant challenges the trial court's ruling refusing to admit certain allegedly exculpatory electronic messages. Evidentiary rulings lie within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *In re F.P.*, 878 A.2d 91, 93 (Pa.Super.2005).

Before evidence may be admitted, it must be authenticated. *Id.* at 93–4. Pennsylvania Rule of Evidence 901 governs the authentication of evidence. Rule 901 states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a).

■ In Appellant's view, the trial court erred in finding that the instant message[5] was not properly authenticated. Appellant asserts that the instant message should have been admitted for impeachment purposes as a prior inconsistent statement. However, Appellant failed to raise this argument before the trial court. Notes of

---

5. This Court previously has reviewed the admissibility of instant messages under the same framework as that of emails and text messages. *See In re F.P.*, 878 A.2d at 95.

Testimony ["N.T."], 06/28/10, at 85–91. Accordingly, even if Appellant had met the authentication threshold, Appellant would not be entitled to any relief because his argument is waived.

██ The instant message purportedly was from J.D.R. In the message, J.D.R. (or someone using her account) recanted her allegations against Appellant. At trial, J.D.R. denied writing the instant message, explaining that multiple people had access to her instant messenger account. N.T. at 52, 53–4. The Commonwealth objected to the admission of the message, asserting that it was inadmissible hearsay. N.T. at 86–87. Appellant's counsel stated, "I disagree," but did not identify any applicable exception. *Id.* at 86–91. Instead, Appellant's counsel first argued that the instant message was a declaration against interest. *Id.* at 88–89. The trial court correctly observed that, for such an exception to apply, the declarant must be unavailable to testify. *Id.;* Pa.R.E. 804(b)(3). J.D.R. was available to testify, and did in fact testify. The trial court explicitly invited Appellant's counsel to offer any applicable exception to the hearsay rule. N.T. at 88–91. Having asserted the inapplicable declaration against interest objection, Appellant offered no other exception whatsoever. *Id.* Instead, Appellant proceeded to argue that the instant message could be entered into evidence with a limiting instruction to the effect that the message was offered not as proof of the matters asserted therein, but only as proof that it was sent or received. N.T. at 87, 89. The trial court replied that it could only provide such a limiting instruction if Appellant could "establish[ ] which exception or exclusion applies." N.T. at 90–91. The record does not indicate that Appellant did this. Because Appellant did not offer any such exception or exclusion, the evidence

was deemed inadmissible. *Id.;* T.C.O. at 7–8.

██ Appellant now attempts to argue that the instant message should have been admitted as a prior inconsistent statement. He probably is right. But, at trial, he failed to offer this exception even after being invited to do so. It was not the job of the judge to lawyer the case for Appellant. In the trial court, Appellant's counsel simply failed to argue that this hearsay exception applied. *Id.;* T.C.O. at 7–8. Issues raised for the first time on appeal are waived, including "[e]ven issues of constitutional dimension." *Commonwealth v. Strunk,* 953 A.2d 577, 579 (Pa.Super.2008); *See* Pa.R.A.P. 302(a). In order to preserve application of a hearsay exception for appellate review, that specific exception must first be raised before the trial court. *See Boykin v. Brown,* 868 A.2d 1264, 1266–67 (Pa.Super.2005); *Commonwealth v. Fink,* 791 A.2d 1235, 1248 (Pa.Super.2002); Pa. R.A.P. 302(a).

At trial, Appellant never referred to the instant message as a prior inconsistent statement, or as impeachment evidence. Additionally, Appellant made no constitutional argument about his Sixth Amendment right to confront an adverse witness. The trial court made an open and forthcoming effort to entertain evidentiary argument. *See* N.T. at 86–91. Appellant failed to rise to the occasion. His argument now is too late, and is barred by waiver.

Next, Appellant argues that the trial court erred in consolidating the two cases against him. "Whether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Newman,* 528 Pa. 393, 598 A.2d 275, 277 (1991).

■ Pennsylvania Rule of Criminal Procedure 582 provides that joinder of offenses charged in separate indictments or informations is permitted when "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa. R.Crim.P. 582(A)(1)(a). Evidence of other criminal behavior is not admissible to show a defendant's propensity to commit crimes. *Newman,* 598 A.2d at 278. However, such evidence "may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" so long as the "probative value of the evidence outweighs its prejudicial effect." Pa.R.E. 404(b)(2),(3); *Id.*

The Commonwealth moved for consolidation in order to establish Appellant's motive, opportunity, common scheme, and intent to commit unlawful contact with a minor.[6] The Commonwealth also asserted that evidence of both crimes was necessary to rebut Appellant's attacks on the victims' credibility.

■ "Consolidation of indictments requires ... that there are shared similarities in the details of each crime." In *Newman,* the Pennsylvania Supreme Court held that consolidation was proper where: 1) both rapes occurred in the x-ray department; 2) each occurred late at night when appellee was the only technician on duty; 3) both victims were females suffering from head injuries; 4) both victims were half the size of appellee; 5) appellee began kissing the victims, hugging the victims, and fondling the victims' breasts before climbing onto the examination table and raping them. *Newman,* 598 A.2d at 278.

In *Commonwealth v. Keaton,* the Pennsylvania Supreme Court again held that consolidation was proper where:

1) the offenses were committed over a period of less than six months; 2) each was committed at night; 3) in each case, [the appellant] forced his victim into an abandoned house; 4) the abandoned houses were all in the same neighborhood in which [the appellant] and the victims lived; 5) the abandoned houses were within a two-block radius of each other; 6) each offense involved a combination of bondage or strangulation of the victim; 7) each offense involved the rape of the victim; and 8) all victims shared similar personal characteristics: all were black females in their late twenties or thirties, all were acquainted with [the appellant], and all were crack cocaine addicts.

*Keaton,* 556 Pa. 442, 729 A.2d 529, 537 (1999) (footnote removed).

In *Commonwealth v. Hughes,* the Pennsylvania Supreme Court found that the crimes shared sufficient similarities in their details warranting consolidation, where:

1) both crimes involved young females ...; 2) both victims were non-Caucasian ...; 3) both crimes occurred during the daytime; 4) both crimes took place within a four-block radius; 5) both crimes took place within a five-minute walk from [the appellant's] home; 6) both crimes involved circumstances in which the victim was lured or strong-armed off the street; 7) both victims were taken to upstairs bedrooms of vacant buildings; 8) in both crimes the assailant ordered the victims to undress; 9) both crimes involved rape, other sex acts ..., and manual strangulation; and 10) both crimes involved circumstances in which

---

6. 18 Pa.C.S.A. § 6318(a) requires proof of intentionally contacting a minor for the purpose of engaging in any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

the accused and the victims previously were acquainted.

*Hughes,* 521 Pa. 423, 555 A.2d 1264, 1282 (1989) (numbering brackets altered for consistency).

In contrast, the Supreme Court held that the details were not sufficiently similar to warrant consolidation where:

1) the victims were of totally different ages and sexual attractiveness; [7] 2) the weapons used were not identical; and, 3) nothing distinctive separated the two crimes involved from other street crimes .... 4) the rape charged occurred in a garage while the other occurred in [the appellant's] apartment; 5) while both rapists wore sunglasses, the rapist here wore rose colored, light tinted sunglasses and, in the other he wore dark sunglasses; and, 6) the first rape also involved a robbery, violence by choking, and tying the victim, but there were no such incidents in the second rape.

*Commonwealth v. Patterson,* 484 Pa. 374, 399 A.2d 123, 127 (1979) (footnotes and quotation marks omitted, numbering altered for clarity, and numbering brackets altered for consistency).

■ In the instant case, the trial court found that the crimes were substantially similar and that consolidation was appropriate for the following reasons:

1) Both victims were twelve years old at the time of the crime.

2) Both victims were Hispanic.

3) Both victims had a close relationship to the Appellant.

4) Both victims were assaulted where the victim was residing that day.

5) Both victims reported the assault involved vaginal sex.

6) Both victims knew the Appellant through involvement in martial arts. The Appellant attended classes with both victims at separate schools. The Appellant was a classmate and eventually an instructor at the school G.O. attended. The Appellant was a classmate at the school J.D.R. attended.

7) The Appellant assaulted G.O. only two months after assaulting J.D.R. The Appellant assaulted G.O. on September 17, 2005 and assaulted J.D.R. in July 2005.

8) The Appellant cultivated a long-term relationship with both complainants and told them that he had "feelings" for them. The Appellant told J.D.R. he wanted to make her his girlfriend. Similarly, in 2004, the Appellant wrote G.O. a letter saying he loved her, wanted to get engaged to her when she was age 18, wanted to marry her when she was age 20, and wanted to have a child with her named "A.J."

9) The Appellant bought J.D.R. a cell phone. J.D.R. spoke to the Appellant on that cell phone daily. The Appellant also wrote that he would get G.O. a cell phone so they could talk daily.

10) The Appellant told J.D.R. that he loved her and missed her (while she was living in Florida during the school year). The Appellant told J.D.R. he wanted to make love to her to show her how much he cared for her. On the day the Appellant raped J.D.R. (July, 2005), the Appellant complained J.D.R. would not let him show her that he loved her (after J.D.R. rejected the Appellant's initial attempts to have sex). On the day the

---

7. We wholeheartedly agree with the view, espoused by Justice Roberts in dissent, that the "sexual attractiveness" of the victims is "wholly irrelevant to this crime of violence."

*See Commonwealth v. Patterson,* 484 Pa. 374, 399 A.2d 123, 127 (1979) (Roberts, J., dissenting).

Appellant raped G.O. (September 27, 2005), he told G.O. that he was leaving Philadelphia, was going to miss her, and wanted to give her stuff to remember him by. In both cases, the Appellant attempted to convince the victims that having sex with them would allow him to show his love for them.

T.C.O. at 10 (citations to Notes of Testimony omitted and numbering brackets altered for consistency).

Appellant attempts to differentiate the details of the assaults against J.D.R. and G.O., arguing that those assaults are not sufficiently similar. Appellant points to four minor distinctions: 1) the assault on G.O. occurred during the day, whereas the assault on J.D.R. occurred late at night; 2) Appellant entered G.O.'s home under the guise that he had to use the bathroom, whereas Appellant entered J.D.R.'s grandmother's home after telephonically gaining permission to visit; 3) the assault on G.O. began with Appellant "grabbing [G.O.] and hugging her," whereas the assault on J.D.R. began with Appellant kissing J.D.R.; and 4) Appellant instructed G.O.'s Tae Kwon Doe class, whereas Appellant was a fellow student in J.D.R.'s Tae Kwon Doe class. Appellant's Brief at 15.

We find that the similarities between the two assaults substantially outweigh their slight differences, and that those similarities adequately support the trial court's consolidation of the two cases. Our Supreme Court previously has held that consolidation was appropriate where the ages and races of the victims were similar, where the assaults occurred close in time and at similar locations, where the assaults were achieved through similar means, and where the assaults involved similar crimes. *See Newman,* 598 A.2d at 278; *Keaton,* 729 A.2d at 537; *Hughes,* 555 A.2d at 1282. In the instant case, the details as enumerated by the trial court supported a finding

of substantial similarity warranting consolidation.

As to the second component of the Rule 582 standard, we believe that, as in *Newman, Keaton,* and *Hughes,* the evidence of each offense here is "capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582. Appellant did not provide any argument on this point. The facts of the case provide us with no reason to hold otherwise.

■ In addition, the probative value of the other rape allegation against Appellant outweighed its prejudicial effect in each case. The evidence of each rape was critical to corroborate the victims' testimony, and to deflect Appellant's anticipated credibility attacks of the victims. In *Commonwealth v. Powers,* 395 Pa.Super. 231, 577 A.2d 194, 196–97 (1990), we held that evidence of prior bad acts was admissible to dispel false inferences raised by the defendant. In *Powers,* the Commonwealth properly was permitted to rebut the appellant's testimony that he had never shown X-rated videos to any of his grandchildren by introducing the testimony of another grandchild to whom he had in fact shown such videos. *Id.* As in *Powers,* the victims' testimony in the instant case was admissible to refute Appellant's attempt to impeach the victims' testimony on the basis that they were jealous of his new girlfriend. Accordingly, we find that the probative value of the victim's testimony and the evidence of each crime outweighed the potentially prejudicial effect of consolidation.

The trial court did not abuse its discretion in consolidating the matters for trial.

Judgment of sentence affirmed. Jurisdiction relinquished.