J-S21036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NIAJEE COOPER | : | |
| | : | |
| Appellant | : | No. 1360 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 13, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000727-2016

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                 **FILED SEPTEMBER 27, 2021**

Niajee Cooper, *nunc pro tunc*, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas at CP-51-CR-0000727-2016 following a bench trial in which he was convicted of aggravated assault, several counts of robbery – threat of immediate serious injury, prohibited possession of firearm, carrying a firearm without a license, carrying a firearm in public in Philadelphia, and possessing an instrument of crime.[1] Although Cooper was initially charged at three separate docket numbers, the trial court granted the Commonwealth's consolidation motion in order to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 2702; 18 Pa.C.S.A. § 3701(a)(1)(ii); 18 Pa.C.S.A. § 6105(a)(1); 18 Pa.C.S.A. § 6106(a)(1); 18 Pa.C.S.A. § 6108; and 18 Pa.C.S.A. § 907(a), respectively.

concurrently hear all of the charges against him.[2] Ultimately, following guilty verdicts for those aforementioned offenses, Cooper was sentenced to sixteen to forty years of incarceration to be followed by ten years of probation. On appeal, Cooper singularly challenges whether it was an abuse of discretion for the court to grant the Commonwealth's motion to consolidate.[3] After a thorough review of the record and upon considering the trial court's adjudication of the underlying issue, we conclude that the court did not abuse its discretion and affirm.

Briefly, three armed robberies occurred over the span of a twelve-hour period in Philadelphia. In each event, the robber discharged his firearm and nonfatally struck the target victim.

The first incident, as described by that specific victim, involved the perpetrator approaching him outside of a store. While pointing a silver revolver at the victim and telling him to lay down, the culprit shot the victim in the arm and then fled even though the victim attempted to comply, at least in part, by furnishing the gun wielder with money. After the shooting, the victim

---

[2] The Commonwealth *nolle prossed* one of the three consolidated cases prior to trial.

[3] Cooper has appealed from both trial court docket numbers, resulting in two separate appeals before this court: (1) 1360 EDA 2020, the present case; and (2) 1361 EDA 2020. Both appeals identically argue that it was in error for the court to consolidate Cooper's cases. The only material difference is that the latter case includes an additional issue, which is addressed in a separate memorandum. **See *Commonwealth v. Cooper***, 1361 EDA 2020 (Pa. Super.) (unpublished memorandum).

described his attacker as a black male, weighing approximately 220 pounds, who was wearing a black leather jacket and hooded sweatshirt. While the victim identified Cooper in a photo array twelve hours after the shooting, he indicated that Cooper was not the shooter during Cooper's preliminary hearing.

The second robbery, transpiring one hour after the first, occurred inside of a restaurant. There, the shooter approached that victim with a silver revolver and commanded all the victim's money. The victim was then shot while attempting to leave. The victim described the shooter as a thin black male wearing a black skull cap, black jacket, and sunglasses. However, the victim could not identify Cooper in a subsequent photo array or lineup identification procedure.[4] Review of the restaurant's video surveillance system established that the shooter was wielding a silver revolver and wearing both a black leather jacket as well as black gloves with "AGT" in white letters on them.

Some eleven hours after the second robbery, the third victim and two of his friends, while standing on a subway platform, were approached by the shooter. The shooter initially inquired whether he could use one of that group's SEPTA cards in exchange for money, but he walked away from the group after this interaction. A short time later, he returned and targeted the victim with a silver revolver. The shooter demanded that the victim empty the contents of

---

[4] During the lineup, the victim identified an individual who was not Cooper as the shooter.

his pockets, but the victim indicated that he did not have anything. To assuage the shooter, the victim offered a phone charger from his pocket. At some point, sensing an opening, the victim ran up the subway steps. However, the shooter followed. Ultimately, the perpetrator shot the victim with his silver handgun at street level, notwithstanding that the victim was walking backwards with his hands up just prior to the shooting.

Two officers saw this third robbery/shooting take place. Those officers observed: (1) the discharge of the silver weapon; (2) the shooter, later identified as Cooper, walk away and head towards a nearby parking lot; and (3) Cooper, while in motion, throw the firearm over a fence. When ordered to stop, Cooper, in the process of surrendering, took off his gloves and tossed them on the ground. Cooper was observed by officers to be wearing a black leather jacket, dark-colored hoodie, and blue jeans. Almost simultaneously, the officers recovered the loaded silver revolver thrown by Cooper as well as the black gloves with white "AGT" lettering on them.

Cooper's cell phone was seized at arrest. That cell phone would eventually be analyzed for locational/geographic data, which tied its location to the geographical vicinity of all three shootings. In addition, Cooper's jacket and gloves tested positive for gunshot residue. The gloves, too, had Cooper's DNA on them.

Following Cooper's arrest, the Commonwealth filed three bills of information against him, stemming from the three events described, *supra*, charging him with aggravated assault and other related offenses. Eventually,

the Commonwealth filed a motion to consolidate those three cases, which was granted. However, prior to trial, the Commonwealth *nolle prossed* the first of the three consolidated cases. Cooper thereafter waived his right to a jury trial.

Following a bench trial and subsequent conviction, Cooper filed a post-sentence motion, which was ultimately denied by operation of law, and no further action was taken at that point. Cooper then filed a timely *pro se* Post Conviction Relief Act petition wherein he sought reinstatement of his appellate rights *nunc pro tunc*. **See** 42 Pa.C.S.A. §§ 9541-9546. The court eventually granted his petition. After that, the relevant parties, including a now represented Cooper, complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925. Accordingly, this matter is ripe for disposition.

On appeal, Cooper presents one question for our review:

1. Did the trial court err and manifestly abuse its discretion when [it] consolidated [] Cooper's cases?

Appellant's Brief, at 4.

The gravamen of Cooper's claim is that, after his cases were consolidated, he was denied "a fair trial" because "[t]he evidence of each of the offenses would not have been admissible in separate trials for the others." *Id*., at 8. Cooper further states that "the crimes charges were not based on the same act or transaction." *Id*. Cooper concludes with the proposition: "[e]ven if evidence of the shootings was admissible in separate trials for the others, the Commonwealth's need for the evidence was significantly

outweighed by the possibility of unfairly prejudicing [] Cooper." ***Id***.

We note that:

In reviewing a trial court decision to consolidate or to sever offenses for trial, our standard is abuse of discretion. Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P[]. 582(A)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.P[]. 583.

Our Supreme Court has established a three[-]part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine

> whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Thomas***, 879 A.2d 246, 260 (Pa. Super. 2005) (some citations omitted). On the issue of admissibility, while evidence of other criminal behavior is inadmissible to establish an individual's propensity to commit crimes, such evidence may be admitted to demonstrate, among other bases, identity as long as the "probative value of the evidence outweighs its prejudicial effect." ***Commonwealth v. Smith***, 47 A.3d 862, at 867 (Pa. Super. 2012) (citation omitted). In short, for consolidation to be warranted: (1) the evidence of one crime must be admissible in a separate trial for the other crime or crimes; (2) the factfinder must be capable of distinguishing the

evidence so as not to lead to confusion; and (3) if the first two prongs are met, the defendant must not be unduly prejudiced as a result of consolidation.

> In applying these precepts, the trial court determined:

> Here, the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion. Each case shares similarities with one another. In both cases, each [victim] was approached by an individual demanding that [he] give him whatever [he] had and then [was] shot. The individual described in each case possessed a silver gun and wore the same clothing - jeans, black leather jacket, and gloves bearing the letters "AGT" in white and distinctive yellow lettering. Each incident occurred in close proximity, both in time and location, to the other and the trial court found the evidence and information to be so intertwined as to be reliant on one another. The evidence from each incident is closely tied together and goes to the identification of the [Cooper]. Further, each case would necessitate some of the same police personnel as witnesses to testify to both the recovery of the evidence, such as the gun, clothing, and gloves, and the eventual arrest of [Cooper].

> [Cooper] was not prejudiced and did not suffer "clear injustice" from the trial court's decision to consolidate [Cooper]'s cases. The trial court used its discretion to consolidate the cases because the incidents were very closely related and were similar to one another. Even consolidated, the evidence did not tend to convict [Cooper] merely by showing [Cooper]'s propensity to commit crimes. The trial court certainly understood the need to evaluate the evidence in each case separately to determine whether the Commonwealth was able to present sufficient evidence to prove guilt beyond a reasonable doubt in each of these matters. Further, the evidence could be easily separated by the trial court and would not become cumulative.

Trial Court Opinion, 10/26/20, at 7-8 (record citation omitted).

To refute the trial court's findings, Cooper chiefly asserts that the "victims' descriptions of the shooter were too dissimilar" to establish a pattern of identity. Appellant's Brief, at 10. Effectively, Cooper contends that the

divergent description of the shooter given by the first robbery victim[5] from that of the other two victims could not have formed the basis of admissible identity-based evidence. Moreover, while the first victim initially picked out Cooper from a photo array, he failed in making any kind of positive identification after that point. Additionally, the second victim never identified Cooper as the shooter.[6] Cooper ends his argument by stating that "the victims offered nothing more than a generic description of a gun, stating that the shooter possessed a silver revolver." *Id*., at 11-12.

Similarly, Cooper emphasizes that these robberies could not have been consolidated under the *res gestae* exception – another exception to the rule against the admissibility of evidence of other criminal behavior. The *res gestae* exception allows for the "admission of distinct crimes … where it is part of the history or natural development of the case[.]" ***Commonwealth v. Brown***, 52 A.3d 320, 325-26 (Pa. Super. 2012). This exception is also known as the "complete story" rationale, where "evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." *Id*. (citations and internal quotation marks omitted). Cooper contends that "because these three

_____

[5] As has already been stated, the corresponding charges from this event were *nolle prossed*.

[6] The victim could not make an identification because the offender's face was covered during the entire robbery/shooting event. ***See*** Motion to Consolidate Hearing, 12/15/16, at 7.

incidents took place in different locations, which did not share common characteristics, and involved seemingly random victims[,]" they were "in no way part of the same transaction or sequence of events." Appellant's Brief, at 13.

As to the prejudice purportedly suffered by Cooper, he believes that the Commonwealth did not need any additional evidence beyond what it already had in the third robbery given that "two police officers observed [] Cooper shoot the victim." *Id*., at 14. However, Cooper implicitly asserts that the Commonwealth needed some sort of convenient "bridge" to establish identification evidence in the second robbery because of that victim's inability to identify the perpetrator. In closing, Cooper points to the dissimilarities between the "location, time of day, and circumstances of the shootings" as well as the shooter's reported clothing differences to show that consolidation unfairly prejudiced him. *Id*., at 15.

Taking the entirety of Cooper's arguments into consideration, we are constrained to conclude that the trial court's analysis demonstrates a considered approach to the "consolidation test," and it was not an abuse of discretion for it to determine that the evidence of each robbery/shooting would have been admissible in a separate trial for the other, particularly predicated on identity. Pennsylvania Rule of Evidence 404(b)(2) explicitly allows for the admission of evidence of other crimes if it is relevant for a purpose other than showing criminal propensity. This subsection expressly permits evidence

related to a defendant's common scheme or plan or his identity. In addition, we note that "the importance of a temporal nexus between crimes declines as the similarity of the crime increases." *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa. Super. 2009).

In spite of there being minor differences between the three robberies/shootings, it is unrefuted that they all occurred (1) within a twenty-four hour time frame; (2) in public, within a similar geographic vicinity of Philadelphia; (3) with the shooter wielding a silver revolver; (4) after the shooter used comparable phrasing to implicitly, if not explicitly, demand money; (5) with the shooter thereafter discharging his weapon as the victims attempted to flee; and (6) with all three victims being of the same race. As to the latter two robberies, each featured, at a minimum, distinctive gloves and similarly described clothing. And as stated previously, the gloves tested positive for Cooper's DNA, and both the jacket and gloves featured positive gunshot residue screenings. Additionally, the victims and the video surveillance of the second robbery are in unison with one another insofar as the perpetrator was wearing a black leather jacket. Furthermore, Cooper does not challenge the saliency of his cell phone's locational data, which placed him in the area of all three robberies within the exact time frame of those criminal acts. When taken together, it does not strain credulity to find that there was a sufficient basis for the trial court to conclude that evidence gathered from

one robbery/shooting was being proffered in order to establish identity for the other.

We further emphasize that Cooper has not adequately refuted the notion that the trial court could separate the evidence to avoid the danger of confusion. Our Supreme Court has indicated that in a non-jury trial, "it is presumed that a trial court, sitting as fact-finder, can and will disregard prejudicial evidence." **Commonwealth v. Fears**, 86 A.3d 795, 819 (Pa. 2014) (citation omitted). Moreover, a judge is presumed to be able to separate distinguishable evidence from different crimes. **See Commonwealth v. Gribble**, 863 A.2d 455, 462 (Pa. 2004). Cooper has only spoken generically to the issue of factfinder confusion and has not directly addressed the heightened standard associated with bench trials. However, we see no reason to conclude that the trial court was unable to compartmentalize the different factual backgrounds of the two tried robberies/shootings.[7]

While there may have been some slight discrepancies in the reported characteristics of the shooter across all three robberies, there is, conversely, an overwhelming amount of corroborative evidence in the record tending to demonstrate identity. Furthermore, cognizant that the most distinct deviation of the assailant's description occurred in the *nolle prossed* series of charges,

_____

[7] In addition, all three robberies/shootings occurred at distinct locations and featured different eyewitnesses. **See Commonwealth v. Johnson**, 179 A.3d 1105, 1117 (Pa. Super. 2018) (finding no jury confusion nor corresponding prejudice when faced with a similar series of facts).

- 11 -

we are unable to conclude that Cooper has been unduly prejudiced. Correspondingly, we agree with the court that, even though there may be some element of prejudice by consolidating these robberies, the probative value obtained outweighs any sort of prejudicial effect. For example, given the inextricable similarities between the gloves recovered after the third robbery/shooting and the ones clearly captured on the video surveillance of the second robbery/shooting scene, admission of that kind of physical evidence clearly yields more weight than any kind of countervailing consideration of prejudice.

As we determine that the court did not abuse its discretion in granting the Commonwealth's motion to consolidate, we affirm Cooper's judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins this Memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2021