J-S22004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LEO MCNEIL | : | |
| Appellant | : | No. 1645 EDA 2021 |

Appeal from the PCRA Order Entered January 27, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000455-2007

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LEO MCNEIL | : | |
| Appellant | : | No. 1853 EDA 2021 |

Appeal from the PCRA Order Entered January 27, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000456-2007

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 22, 2022**

Leo McNeil appeals from the order entered in the above-captioned cases that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

On October 23, 2007, following a non-jury trial, Appellant was convicted of numerous offenses in connection with the sexual abuse of his niece and

nephew, who were young adults at the time of trial, but who had been assaulted when they were children. Evidence admitted at trial, upon the concession of Appellant's trial counsel, included testimony about the facts underlying Appellant's earlier convictions that related to the abuse of his daughter, son, and a different niece when they were young children.[1] Specifically, Appellant's daughter, aged eleven, testified to abuse that occurred to her when she was seven, and to her younger brother.

Following the convictions, the trial court sentenced Appellant to an aggregate term of twenty-two to forty-four years of incarceration, followed by twenty years of probation, and this Court affirmed. **See Commonwealth v. McNeil**, 131 A.3d 93 (Pa.Super. 2015) (*en banc*) (unpublished memorandum).

The PCRA court summarized the subsequent procedural history as follows:

> On March 31, 2016, [Appellant] timely filed his first PCRA petition. PCRA counsel filed an amended PCRA petition on March 30, 2017, a supplemental amended PCRA petition on April 18, 2017, a second supplemental amended PCRA petition on September 25, 2017, and a third supplemental amended PCRA petition on November 3, 2017. [Appellant] claimed that his trial counsel was ineffective at trial for stipulating to [Appellant]'s two prior no-contest pleas in previous cases of corruption of a minor, [endangerment], and incest where no colloquy was conducted of [Appellant] to determine if he was knowingly waiving his right to confront this evidence by this stipulation. [Appellant] alleges the

---

[1] However, counsel successfully argued against the admission of statements made by Appellant at his sentencing hearing on the prior convictions concerning the earlier acts of abuse.

stipulation aided the Commonwealth in establishing his identity as the perpetrator of the crimes in the instant cases. [Appellant] also claimed that his designation as a sexually violent predator ("SVP") was ruled unconstitutional and illegal in ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa.Super. 2017)[,] and that the PCRA court should vacate its finding of SVP in [Appellant]'s case.

The Commonwealth filed a letter brief in response to [Appellant]'s PCRA on February 16, 2018 and a motion to stay pending the Supreme Court of Pennsylvania's decision regarding ***Commonwealth v. Buller*** and whether SVP designation is constitutionally sound on August 14, 2018. On October 28, 2018, PCRA counsel was permitted to withdraw and new PCRA counsel was appointed.

New PCRA counsel filed an amended PCRA on February 18, 2020. On August 5, 2020, the Commonwealth filed a motion to dismiss the [Appellant]'s SVP claim without an evidentiary hearing following the Supreme Court of Pennsylvania's decision on ***Commonwealth v. Butler***, 226 A.3d 972, 993 (Pa. 2020). New PCRA counsel filed a second amended PCRA on November 9, 2020[,] in response to the Commonwealth's motion to dismiss and removed [Appellant]'s claim regarding his SVP designation.

[The PCRA court], after carefully reviewing the record, [Appellant]'s filings, PCRA counsel's amended petition, the Commonwealth's letter in brief, the Commonwealth's motion to dismiss, and PCRA counsel's second amended petition in response, determined the issues raised by PCRA counsel lacked merit and dismissed [Appellant]'s PCRA petition without an evidentiary hearing. The PCRA court sent [Appellant] a Pa.R.Crim.P. 907 notice of dismissal on December 9, 2020. On January 27, 2021, [The PCRA court] issued an order denying [Appellant] postconviction relief.

On February 8, 2021, [Appellant] filed a notice of appeal of the dismissal of his PCRA petition. On February 16, 2021, [The PCRA court] permitted new PCRA counsel to withdraw, appointed current PCRA counsel, and ordered [Appellant] to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). For some reason, counsel's withdrawal and current PCRA counsel's appointment was not docketed so [the] PCRA court held a status hearing on March 2, 2021 to permit counsel to withdraw and appoint current PCRA counsel for appeal

- 3 -

purposes. [Appellant] complied and filed his statement of errors on March 9, 2021. On April 8, 2021, [The PCRA court] filed an opinion concluding the Superior Court should affirm [The PCRA court]'s dismissal of [Appellant]'s PCRA petition without an evidentiary hearing.

On May 28, 2021, [Appellant]'s appeal was dismissed by the Superior Court for failure to comply with Pa.R.A.P. 3517. On August 6, 2021, [The PCRA court] reinstated [Appellant]'s appellate rights *nunc pro tunc*. On August 16, 2021, [Appellant] again filed a notice of appeal of the dismissal of his PCRA petition. On August 18, 2021, [The PCRA court] ordered [Appellant] to file a concise state of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). [Appellant] complied and filed his statement of errors on September 7, 2021.

PCRA Court Opinion, 9/23/21, at 1-4 (cleaned up).

Appellant presents one question for our review: "Did the PCRA court err and abuse its discretion when it dismissed [Appellant]'s PCRA petition without a hearing, where trial counsel rendered ineffective assistance for failing to object to the admission into evidence of [Appellant]'s prior convictions?" Appellant's brief at 5.

We consider Appellant's question mindful of the following legal principles. "Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Washington**, 269 A.3d 1255, 1262 (Pa.Super. 2022) (cleaned up). "This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. We review the court's legal conclusions *de novo*." **Id**. (cleaned up). Furthermore, "[i]t

- 4 -

is an appellant's burden to persuade us that the PCRA court erred and that relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant's issue involves allegations of ineffective assistance of counsel. As this Court has summarized:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019) (cleaned up).

A claim has arguable merit when "the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." ***Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021) (cleaned up). Regarding the second prong, counsel lacked a reasonable basis for his or her decision if "no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." ***Id***. (cleaned up). "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A

- 5 -

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 521 (cleaned up). Finally, "a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Id*. (cleaned up).

The PCRA court held that Appellant's claim that counsel was ineffective in failing to object to the admission of evidence of Appellant's prior assaults his daughter, son, and niece lacked arguable merit because the evidence was properly admitted pursuant to Pa.R.E. 404(b) ("Other Crimes, Wrongs, or Acts"). *See* PCRA Court Opinion, 9/23/21, at 6-7.

Rule 404(b) provides in relevant part as follows:

(1) *Prohibited Uses*. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

Our Supreme Court has held that evidence of other acts is admissible in cases akin to the ones *sub judice* "where the ages and races of the victims were similar, where the assaults occurred close in time and at similar locations, where the assaults were achieved through similar means, and where the assaults involved similar crimes." *Commonwealth v. Smith*, 47 A.3d 862, 869 (Pa.Super. 2012) (collecting cases). For example, in

*Commonwealth v. Keaton*, 729 A.2d 529 (Pa. 1999), the High Court ruled

that evidence of three different crimes was admissible against defendant

Keaton in a consolidated trial where:

> 1) the offenses were committed over a period of less than six months; 2) each was committed at night; 3) in each case, Keaton forced his victim into an abandoned house; 4) the abandoned houses were all in the same neighborhood in which Keaton and the victims lived; 5) the abandoned houses were within a two-block radius of each other; 6) each offense involved a combination of bondage or strangulation of the victim; 7) each offense involved the rape of the victim; and 8) all victims shared similar personal characteristics: all were black females in their late twenties or thirties, all were acquainted with Keaton, and all were crack cocaine addicts.

*Id*. at 537 (footnote omitted).  Conversely, in *Commonwealth v. Patterson*,

399 A.2d 123 (Pa. 1979), the Court held that the crimes at issue were not

sufficiently similar to fall within a Rule 404(b)(2) exception where the victims

were different ages, different weapons were used, one rape was in Patterson's

apartment and the other in a garage, the rapists wore different sunglasses,

one rape involved robbery, bondage, and choking while the other did not, and

"nothing distinctive separated the two crimes involved from other street

crimes." *Id*. at 127.

Accordingly, the details of the prior and at-issue assaults are pertinent

to our determination of the admissibility of the Rule 404(b) evidence in this

case.  This Court summarized those details as follows in adjudicating

Appellant's direct appeal:

> Appellant's eleven-year-old daughter testified first as a bad acts witness.  She initially related that, when she was seven years

old, her father entered her bedroom while she was sleeping. He proceeded to remove her pajamas and his own pants and turned her over onto her stomach. Appellant then got on top of his daughter and placed his penis between his daughter's buttocks and began to move while his penis was touching her buttocks. She maintained that Appellant rubbed his penis between her buttocks. This occurred on more than one occasion.

In addition to relaying this story, she also informed the court of an incident involving her brother. Both she and her brother shared a bedroom. According to her, the night after the first incident she awoke to see her father in bed with her brother. After her father left the room, she discovered that her brother was bound with a jump rope, and she untied him. Her brother, who was two years younger than she, was crying. Lastly, Appellant's daughter testified to witnessing him abuse one of her female cousins. On this occasion, she peeked into her father's room and saw him laying on his back with her cousin laying and moving on top of him stomach to stomach.

Next, the Commonwealth presented one of the victims in this case, C.J., Appellant's nephew. C.J. was seventeen at the time of trial. He recounted being abused by Appellant when he was between nine and thirteen years of age. On one occasion, Appellant pulled down C.J.'s pants and Appellant put his penis in the victim's buttocks. Prior to that, Appellant had attempted to put his penis in C.J.'s buttocks and the victim told him that it hurt, and Appellant stopped. In addition to these incidents, C.J. informed the court that Appellant inappropriately touched his legs and buttocks several other times. C.J. also testified that Appellant grabbed his penis. Further, C.J. maintained that Appellant took him to work and abused him. Specifically, Appellant was cleaning a bank at night. He made the victim lie down on his stomach and close his legs. Appellant then put his penis between the boy's thighs and ejaculated.

C.J.'s older sister, R.J., twenty years old at the time of trial, added that when she was in fourth grade, while riding in a car with Appellant, he began to grind on her sister who was sitting on his lap. That sister, H.J., is the victim in question herein. She was nineteen at trial and confirmed R.J.'s testimony. In addition, according to H.J., Appellant first abused her when she was approximately five years old. H.J. provided that, at the time, Appellant was staying in the basement of her home. Appellant

called her downstairs and she went to the basement with her brother, C.J. Appellant sent H.J.'s brother upstairs to get a light bulb. After H.J.'s brother left, Appellant told the victim to remove her pants. When she did not, Appellant took them off for her. He then laid her on his bed on her stomach. Appellant then climbed on top of her after pulling his pants down.

H.J. continued, stating that Appellant put his penis on her butt. She testified, "when he touched my butt, he was just rubbing his stuff on me and on my front but down a little bit." H.J. maintained that Appellant's penis touched her vagina but he did not put it inside her vagina. According to her, "he would put his penis between her legs but have it on her butt right there (indicating)."

When H.J. was eleven, twelve, or thirteen, Appellant asked her if he could pay her to have sex with him. Specifically, he inquired if he could take her virginity. When the victim declined, he increased the price that he was willing to pay. This incident was interrupted when C.J. knocked on the door. Appellant attempted to pay C.J. to leave, but the victim left the room with her brother.

**McNeil**, **supra** (unpublished memorandum at 2-4).

Appellant maintains that the PCRA court erred in concluding that the testimony concerning the prior assaults was admissible because it was mere propensity evidence prohibited by Rule 404(b)(1). **See** Appellant's brief at 17. Appellant contends that the similarities among the incidents were insufficient to bring the evidence within a Rule 404(b)(2) exception but were instead "confined to insignificant details that would likely be common elements regardless of who committed the crimes." **Id**. at 20 (cleaned up) (quoting **Commonwealth v. Hughes**, 555 A.2d 1264, 1283 (Pa. 1989)). Specifically, Appellant indicates that only one of the two boys alleged that Appellant touched his penis, and only one stated that string was involved in the assault.

*Id*. at 19. Appellant asserts that the assaults of the girls "were different in how and when they occurred." *Id*. Appellant further argues that, given the meager probative value of the dissimilar acts, it was substantially outweighed by the potential for prejudice, and, therefore, inadmissible. *Id*. at 20-21.

The Commonwealth, however, claims that the similarities were sufficient to render the Rule 404(b) evidence admissible. It highlights that all five children were African American, under the age of nine when the assaults began, related to Appellant, assaulted in Appellant's residence while residing or staying there, and each assault "specifically involved, at a minimum, [Appellant] touching the victim's genital area, buttocks, or anus, exposing his penis to the victim, and rubbing his penis on the victim's genital area. *See* Commonwealth's brief at 14-15. The Commonwealth further argues that the evidence was critical to protect the credibility of the victims from attack given the lack of corroborating physical evidence. *Id*. at 16.

We agree with the Commonwealth. We find the commonalities among the assaults significant enough to satisfy Rule 404(b)(2) under the prevailing precedent. For example, the similarities are of the same quality and quantity as those held to warrant admission in *Smith*, *supra*. In that case, we held that evidence of two assaults was sufficiently alike to show a common plan where both victims were twelve years old, Hispanic, assaulted vaginally where the victim was residing, and assaulted while in a close relationship with Smith that he had cultivated through involvement in martial arts. *Id*. at 868-69.

Further, the **Smith** Court concluded that the probative value of the Rule 404(b) evidence outweighed the prejudicial effect because "[t]he evidence of each rape was critical to corroborate the victims' testimony, and to deflect Appellant's anticipated credibility attacks of the victims." **Id**. at 869.

Since the testimony concerning Appellant's prior assaults was admissible pursuant to Rule 404(b)(2), counsel was not ineffective in failing to object. **See**, **e.g.**, **Commonwealth v. Spotz**, 896 A.2d 1191, 1247 (Pa. 2006) ("[C]ounsel will not be deemed ineffective for failing to raise a meritless objection."). Further, because the record established that Appellant could not satisfy the first prong of his claim of ineffective assistance, the PCRA court did not err in dismissing Appellant's PCRA petition without a hearing. **See Commonwealth v. Maddrey**, 205 A.3d 323, 328 (Pa.Super. 2019) ("It is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." (cleaned up)). Therefore, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/2022

- 11 -